TACHA, Circuit Judge.
Plaintiff Robert Smith alleges that his former employer, defendant Midland Brake, Inc., terminated his employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.', and Kansas state law on retaliatory discharge. The district court entered summary judgment for the defendant on all claims. Plaintiff appeals the order of summary judgment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.
*1307 BACKGROUND
Between 1986 and 1993, plaintiff Robert Smith was employed by the defendant, Midland Brake, Inc., in a light assembler position. During this time, plaintiff experienced problems with chronic dermatitis on his hands as well as some muscular injuries. As a result, his physicians placed restrictions on his work activities and on several occasions ordered him to stop working for limited periods. The defendant attempted to accommodate plaintiff’s limitations by assigning him to duties within the light assembly department that involved less lifting and less exposure to irritants and by providing him compensation claim for the dermatitis on May 8, 1992. From May 6, 1992, until the time of his termination, plaintiff was on a leave of absence and was receiving workers’ compensation benefits. On March 3, 1993, defendant agreed to pay plaintiff $20,000 to settle his workers’ compensation claim for the dermatitis. On or about the same date, defendant terminated the plaintiffs employment with Midland Brake, citing an inability to accommodate his skin sensitivity.
The parties dispute exactly what happened between May 1992 and March 1993. Mr. Smith alleges that Midland Brake had a policy of giving employees who became disabled and could not perform their current positions priority over other employees for reassignment to open positions. He contends that there were numerous job openings at Midland Brake that should have been made available to him and asserts that defendant either could have obtained or did obtain releases from his physician for him to work in those positions. Midland Brake, on the other hand, contends that it made efforts to return plaintiff to work in different positions at the company but was unable to obtain a written release from plaintiffs physician allowing him to return to work.
On September 7,1994, plaintiff filed a complaint in the United States District Court for the District of Kansas. In his complaint, plaintiff asserted that he was discharged in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.[1] In addition, plaintiff asserts that, in violation of Kansas law and public policy, he was discharged in retaliation for pursuing his workers’ compensation claim. The district court entered summary judgment for the defendant on each of these claims. We hold that plaintiff has failed to establish a prima facie case under either the ADA or the ADEA, and affirm on each of those claims as discussed below. We also affirm the entry of summary judgment on the retaliatory discharge claim.
DISCUSSION
We review a district court’s grant of summary judgment de novo. See Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir.1995). Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See id.; Fed.R.Civ.P. 56(c). “[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issrue of material fact.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). “ Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,’ summary judgment in favor of the moving party is proper.” Thomas v. IBM, 48 F.3d 478, 484 (10th Cir.1995) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).
1. ADA Claim
The ADA prohibits employers from discriminating against qualified individuals with disabilities, because of the disabilities, in regard to hiring, advancement, discharge, or other terms, conditions, or privileges of employment. See 42 U.S.C. § 12112(a). To prevail on a claim of discriminatory discharge under the ADA, a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, i.e., *1308 with or without reasonable accommodation, he is still able to perform the essential functions of his job; and (3) that his employer fired him because of his disability. See White v. York Int’l Corp., 45 F.3d 357, 360-61 (10th Cir.1995). A person is considered disabled within the meaning of the ADA if he has “a physical or mental impairment that substantially limits one or more of [his] major life activities.” 42 U.S.C. § 12102(2)(A). For the purposes of this appeal, we will assume that Mr. Smith is disabled within the meaning of the ADA. Nonetheless, we find that he is unable to set out a prima facie ease under the ADA because he is unable, even with reasonable accommodation, to perform the essential functions of his job.
To be protected under the ADA, a plaintiff must demonstrate that he is a “qualified individual with a disability.” 42 U.S.C. §§ 12111(8), 12112(a). This inquiry is twofold:
First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if ... we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.
White, 45 F.3d at 361-62 (citations omitted); see also 42 U.S.C. § 12111(8) (defining “qualified individual with a disability”). Mr. Smith does not allege that he can perform the essential functions of his job in the light assembly department. In fact, he admits that because of his chronic dermatitis, his physicians considered him “permanently disabled” and unfit to work in that department. See Pl.’s First Am. Compl., Appellant’s App. Vol. I, Ex. A, at ¶ 16. Furthermore, Mr. Smith has not alleged that there are any reasonable accommodations that would enable him to perform the essential functions of his job. Thus, it is undisputed that Mr. Smith is not a “qualified individual with a disability” as that term is used in the ADA. There is no genuine issue as to this material fact.
Mr. Smith does not contest that he is no longer qualified for his old job, and he does not seek reinstatement to that position. Instead, he argues that the defendant is required, as a reasonable accommodation to his skin condition, to reassign him to another position at the company, outside of the light assembly department. We disagree.
Under the ADA and the corresponding 'guidelines promulgated by the Equal Employment ' Opportunity Commission (EEOC)[2], a reasonable accommodation may include reassignment to a vacant position. See 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii) (1997).[3] The guidelines state that, “In general, reassignment should be considered only when accommodation within the individual’s current position would pose an undue hardship [to the employer].” 29 C.F.R. Pt. 1630, App. § 1630.2(o); see also id. at Pt. 1630, App. § 1630.2(p) (defining undue hardship as “significant difficulty or expense in, or resulting from, the provision of the accommodation”). In other words, reassignment can be used as a means of accommodating a disabled employee when accommodating him in his current position is possible, but difficult for his employer. It follows that when it is not at all possible to accommodate an employee in his current position, there is no obligation to reassign.[4] *1309 Here, it is undisputed that after the plaintiff’s doctor ordered him to stop working in May 1992, no amount of accommodation would have made him qualified for his job in the light assembly department. Thus, Midland Brake is not obligated under the ADA to transfer plaintiff to another position.[5]
In arguing that his employer should have accommodated him by reassigning him to a new position, plaintiff misconstrues the nature and purpose of the ADA The Act is designed to combat discrimination against qualified disabled employees. See 42 U.S.C. § 12101 (congressional findings and purpose of the ADA); id. at § 12112 (general rule prohibiting discrimination against qualified individuals with disabilities). The Act does not require employers to accommodate every employee who becomes disabled, but rather, only those who are still capable, with reasonable accommodation if necessary, of performing the essential functions of their jobs in spite of their disabilities — ie., qualified individuals with disabilities. The ADA does not prohibit an employer from terminating an individual who can no longer perform the essential functions of his position even with reasonable accommodation. Such individuals fall outside the scope of the Act’s protection. See Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 807-09 (5th Cir.1997) (concluding that worker who could not perform essential functions of his current job and sought reassignment was not a qualified individual within the meaning of the ADA).[6] “[T]he duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position. Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995); but see Gile v. United Airlines, 95 F.3d 492, 498 (7th Cir.1996) (holding that ADA may obligate employer to reassign disabled employee who can no longer, even with reasonable accommodation, perform the essential functions of her job). The ADA “prohibits employment discrimination against qualified individuals with disabilities, no more and no less.” Foreman, 117 F.3d at 810 (citations and internal quotation marks omitted); see also Wernick v. Federal Reserve Bank, 91 F.3d 379, 384 (2d Cir.1996) (“[In enacting the disability statutes,] Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons.”); Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir.1995) (“[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled.”), cert. denied, 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). Requiring employers to reassign disabled employees who no longer can perform their old jobs to substantially different positions goes beyond fighting discrimination. In the absence of clear direction from Congress, we decline to give the ADA the expansive interpretation advocated by plaintiff. See Southeastern Community College v. Davis, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (noting that Congress “knew how to provide for [affirmative action] in those instances where it wished to do so”).
*1310 Of course, employers are free to voluntarily reassign employees to new positions even when the ADA does not require them to do so. Plaintiff next asserts that Midland Brake “had an existing company policy of priority reassignment of disabled employees to vacant positions,” Appellant’s Br. at 21, and urges us to find an ADA violation because his employer allegedly failed to follow its own policy in his case. He argues that the ADA requires employers to follow their own policies for dealing with injured workers, even when those policies exceed the explicit requirements of the ADA. In support of this position, plaintiff points to School Board v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), a Rehabilitation Act case in which the Supreme Court stated, in a footnote:
Although [employers] are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer’s existing policies.
Id. at 289 n. 19, 107 S.Ct. at 1131 n. 19 (citations omitted). This dicta simply states the obvious: employers cannot discriminate against disabled employees by preventing them from applying for other positions on the same basis as non-disabled individuals. It also recognizes that, as a matter of administrative law, a governmental employer’s failure to follow its own policies may give rise to an alternative claim, even, when a claim under. the disabilities statutes cannot succeed. See Guillot v. Garrett, 970 F.2d 1320, 1327 (4th Cir.1992) (interpreting Arline passage to mean, at most, that “government agencies and departments must abide by their own regulations and existing statutes”); Carter v. Tisch, 822 F.2d 465, 468-69 (4th Cir.1987) (rejecting plaintiffs Rehabilitation Act claim, but noting possible alternative claim that federal agency acted in arbitrary and capricious manner by terminating him). We decline to interpret the Arline footnote in a way that would impose an affirmative obligation on a private employer to find a new position for the disabled employee. Absent proof of discrimination as defined by the ADA, an employer’s failure to follow its own internal policies does not in itself constitute a violation of the ADA. “While [an employer] is free to exceed the requirements of the ADA in fashioning its policies regarding disabled employees, such policies are not the definitive source of the standard by which reasonable accommodation is measured under federal law.” Myers v. Hose, 50 F.3d 278, 284 (4th Cir.1995). To hold otherwise would discourage employers from developing their own plans for going beyond what federal law requires. “Employers should not be discouraged from doing more than the ADA requires even if the extra effort that perhaps raises an applicant’s expectations does not work out.” Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1023 (7th Cir.1997); see also Vande Zande v. Wisconsin Dept. of Admin., 44 F.3d 538, 545 (7th Cir.1995) (“[I]f the employer ... goes further than the law requires ..., it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.”). Moreover, Mr. Smith’s allegation that his employer reassigned other disabled employees does not demonstrate discrimination based on disability. When all employees to which plaintiff compares himself are disabled, there is no logical inference of discrimination. See Myers, 50 F.3d at 284.
Our decision that the ADA regulations do not require Midland Brake to reassign Mr. Smith is bolstered by a comparison of the EEOC regulations promulgated under section 501 of the Rehabilitation Act of 1973, Pub.L. No. 93-112, 87 Stat. 357 (codified as amended at 29 U.S.C. § 701 et seq.). The Rehabilitation Act prohibits discrimination against disabled employees by federal agencies, see 29 U.S.C. § 791 (codifying section 501 of the Act), and by programs receiving federal financial assistance, see 29 U.S.C. § 794 (codifying section 504 of the Act).[7] *1311 Section 501 requires federal agencies to develop affirmative action programs for the hiring, placement, and advancement of individuals with disabilities. See 29 U.S.C. § 791(b). By contrast, neither section 504 of the Rehabilitation Act nor the ADA creates such affirmative action obligations. “It is well established both by the statutory language and Supreme Court decisions interpreting the [Rehabilitation] Act that federal employers have greater duties to accommodate disabled workers under section 501 than the duties owed by federal grantees under section 504 or those owed by employers under the ADA.” Woodman v. Runyon, 132 F.3d 1330, 1343 (10th Cir.1997). Thus, while the ADA and the Rehabilitation Act generally are to be interpreted and applied consistently with one another, see 29 U.S.C. §§ 791(g), 794(d); 42 U.S.C. §§ 12117(b), 12201(a); White, 45 F.3d at 360 n. 5, the standards used to determine whether a federal employer has violated section 501 of the Rehabilitation Act will not always be identical to those employed in suits brought under section 504 or under the ADA[8] See, e.g., Southeastern Community College, 442 U.S. at 410-411, 99 S.Ct. at 2369-70; Woodman, 132 F.3d at 1343. In particular, this court recently noted that “the meaning of reasonable accommodation ... may vary due to the heightened duties ascribed to federal employers under section 501.” Woodman, 132 F.3d at 1338; see also id. at 1339 n. 8.
In recognition of the federal employer’s heightened duties toward disabled individuals, the EEOC has promulgated rules for reasonable accommodation under section 501 that are stricter than those promulgated under the ADA. According to these regulations, “[w]hen a nonprobationary [federal] employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position” for which the individual is qualified, unless doing so would impose an undue hardship on the agency. 29 C.F.R. § 1614.203(g) (emphasis added). Thus, section 501 of the Rehabilitation Act “imposes an obligation on the federal employer to offer reassignment” to employees who cannot perform their old jobs. Gonza-gowski, 115 F.3d at 748. In this way, the Rehabilitation Act regulations differ from the ADA regulations, which do not expressly mandate reassignment in those circumstances. We find this difference significant. Section 1614.203(g) shows that the EEOC knows how to make reassignment mandatory when it wants to do so. Cf. Southeastern Community College, 442 U.S. at 411, 99 S.Ct. at 2369 (determining that Congress did not intend to impose affirmative, action obligations in section 504 and noting that Congress “knew how to provide for [affirmative action] in those instances where it wished to do so”). Because clear instructions of the sort found in section 1614.203(g) are absent from section 1630.2(o), we find it unlikely that the EEOC intended reassignment to be mandatory under the ADA, except under the limited circumstances we describe above.
The dissent faults us for focusing on “one isolated sentence”[9] of the EEOC guidelines and accuses us of overlooking later language which states: “An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified____” 29 C.F.R. Pt. 1630, App. § 1630.2(o). This language, however, simply confirms that an employer may always voluntarily reassign an employee who can no longer perform her old job because of a disability. The discretionary or permissive nature of this provision becomes even more clear when contrasted with the mandatory language, “shall offer to *1312 reassign,” found in section 1614.203(g) of the guidelines. See 29 C.F.R. § 1614.203(g).
For these reasons, we affirm the district court’s entry of summary judgment for the defendant on Mr. Smith’s ADA claim. We hold that under the ADA, when a plaintiff is not qualified, even with reasonable accommodation, for the job which he currently holds (or, as here, from which he was terminated), the employing entity has no obligation to consider reassigning him to another position. Under the current EEOC guidelines, the employer’s obligation to consider reassignment arises only if the employer can accommodate the employee in his current position, but would experience undue hardship in doing so.[10]
In conclusion of our discussion of Mr. Smith’s ADA claim, we note that the district court seems to have relied at least in part on an estoppel theory when it entered summary judgment for the defendant. See Smith v. Midland Brake, 911 F.Supp. 1351, 1357-61 (D.Kan.1995). The district court pointed out that Mr. Smith had sought disability benefits from the Social Security Administration (SSA) several times between October, 1992, and April, 1993, certifying that he was “totally disabled and unable to work.” Id. at 1356. Eventually, he was granted the benefits he sought.[11] We wish to make clear that under the law of this circuit, Mr. Smith is not judicially estopped from now making claims that are inconsistent with his prior representations to the SSA. See United States v. 49.01 Acres of Land, 802 F.2d 387, 390 (10th Cir.1986) (“The Tenth Circuit ... has rejected the doctrine of judicial estop-pel.”). Hence, any reliance by the district court on an estoppel theory was misplaced. We rely directly on the language of the Act and, the accompanying EEOC regulations. The precise impact, if any, of prior SSA representations on a plaintiffs ADA claim is still an open question in this circuit and one that we do not decide today. For a discussion of how other circuits have handled the issue, see Talavera v. School Board, 129 F.3d 1214, 1217-1220 (11th Cir.1997).
2. ADEA Claim
Mr. Smith next claims that Midland Brake terminated him in violation of the ADEA. To establish a claim of age discrimination under the ADEA, a plaintiff must show that (1) he was within the protected age group at the time of the discharge; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person, or he was treated less favorably than younger employees. See Gonzagowski v. Widnall, 115 F.3d 744, 749 (10th Cir.1997). Mr. Smith meets the first requirement because he was 62 years old at the time of his termination. See 29 U.S.C. § 631(a) (extending protection of ADEA to individuals between 40 and 70 years of age). However, he fails the second prong of the test. As discussed above, Smith concedes that he was unable to continue working in the light assembly department as of May, 1992, and it is undisputed that he did not work for Midland Brake at all between May 1992 and the time of his discharge in March 1993. Thus, he cannot meet the requirement of “satisfactory work.” The ADEA does not require employers to provide any sort of accommodations for employees who become unable to perform their jobs. We .agree with the district court’s holding that there is no genuine issue of material fact as to the plaintiffs. ADEA claim and affirm the grant of summary judgment in favor of the defendant on that claim.
3. Retaliatory Discharge Claim
Finally, Mr. Smith claims that, in violation of Kansas law and public policy, the defendant terminated him in retaliation for his filing of workers’ compensation claims. Again, the undisputed fact that Mr. Smith *1313 was unable to perform Ms old job is disposi-tive. Under Kansas law, an employee with a workers’ compensation claim may be lawfully discharged and cannot maintain a retaliatory discharge action if he is unable to perform his work. See Rowland v. Val-Agri, Inc., 13 Kan.App.2d 149, 766 P.2d 819, 822 (1988) (rejecting retaliatory discharge claim of employee who could no longer perform his job). Plaintiff’s physical inability to perform the job from wMch he was terminated precludes him from prevailing on a retaliatory discharge claim. Thus, we affirm the entry of summary judgment for defendant on the retaliatory discharge claim.
CONCLUSION
Mr. Smith concedes that he is unable to perform the job from wMch he was terminated. Because he cannot perform the essential functions of that position, with or without reasonable accommodation, he does not qualify for protection under the ADA. Furthermore, Ms undisputed inability to perform his job prevents him from establishmg a prima facie ease of age discrimination under the ADEA and also prevents him from claiming he was illegally discharged m retaliation for his worker’s compensation claim. Thus, we AFFIRM the district court’s entry of summary judgment for the defendant on plaintiffs ADA claim, Ms ADEA claim, and Ms claim of retaliatory discharge.

. In his amended complaint, plaintiff also asserted violations of the Kansas state counterparts to the ADA and the ADEA, but he has not pursued those claims on appeal.

. "As an administrative interpretation of the Act by the enforcing agency, [EEOC guidelines], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.” Mentor Sav. Bank v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (citations and internal quotation marks omitted).

. All our references to the C.F.R. are to the 1997 edition current at the time this opinion was drafted. The regulations we cite have not changed in any significant way since they were first promulgated in 1991 and 1992. See 29 C.F.R. Pt. 1614 (stating that source of Part 1614 is 57 Fed.Reg. 12646, Apr. 10, 1992, unless otherwise noted); id. Pt. 1630 (stating that source of Part 1630 is 56 Fed.Reg. 35734, July 26, 1991, unless otherwise noted).

.We note, however, that reassignment is treated differently under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, which prohibits federal agencies from discriminating against disabled individuals. See generally Woodman v. Runyon, 132 F.3d 1330 (10th Cir.1997). We discuss this aspect of* the Rehabilitation Act in greater detail later in this opinion.

. As a result, it is unnecessary for us to reach the question of whether plaintiff is qualified for the other positions to which he seeks reassignment.

. The dissent takes issue with our citation of Foreman, stating that “the court [in Foreman ] concluded plaintiff was not a qualified individual under the ADA with respect to his current job, but nonetheless went on to consider whether reassignment could reasonably accommodate him.” This summary of the Fifth Circuit’s decision implies that the court felt it had to examine the possibility of reassignment for a plaintiff who could not perform his old job. The Foreman court, however, reached several alternative conclusions, holding against Foreman on three separate grounds. The court first found that Foreman was not disabled. See Foreman, 117 F.3d at 804-807. Then, in the part of the opinion to which we refer above, the court “[ajltematively ” held that Foreman did not show that he was a qualified individual under the ADA. Id. at 807-09. Finally, the court also determined, as a third alternative holding, that Foreman failed to show the reassignments he requested would be reasonable accommodations. See id. at 809-10. Thus, the Fifth Circuit examined reassignment not because it believed it was required to do so, but rather because it chose to do so as a third means of holding against the plaintiff. See id. at 809 {“[E]ven if Foreman was disabled and qualified under the ADA, his requested accommodations are not reasonable.” (emphasis added)).

. As it was originally enacted in 1973, the Rehabilitation Act did not mention reassignment at all. See Gonzagowski v. Widnatl, 115 F.3d 744, 748 (10th Cir.1997). In 1992, Congress amended the Rehabilitation Act to conform to the ADA’s standards for employment discrimination, incorporating by reference the ADA’s inclusion of reassignment as a possible reasonable accommodation. See 29 U.S.C. §§ 791(g), 794(d); Gonza-gowski, 115 F.3d at 748.

. The notion that ADA claims and section 501 claims cannot always be resolved according to the same standards is recognized in the Rehabilitation Act itself, in the very provision that generally requires the cases to be res.olved consistently. The Act specifies that ADA standards are to be applied in section 501 "non affirmative action employment discrimination” cases, 29 U.S.C. 791(g) (emphasis added), implying that the same standards should not necessarily govern in cases that implicate the affirmative action obligations of federal employers.

. I.e., "In general, reassignment should be con- • sidered only when accommodation within the individual’s current position would pose an undue hardship." 29 C.F.R. Pt. 1630, App. § 1630.2(o).

. Even in those cases where, the ADA may require the employer to consider reassignment as a reasonable accommodation, there are limits to the employer’s obligation. For example, an employer is not required to create a new position for the plaintiff or to bump another employee in ■ order .to create a vacancy. See White, 45 F.3d at 362.

. Mr. Smith ultimately opted not to take the disability benefits after being informed by the SSA that he would benefit financially by declining the award of disability benefits and accepting early retirement benefits instead.