**Cora E. RICE, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**No. Civ.A. 97–2331–GTV.**

United States District Court,
D. Kansas.

July 10, 1998.

Candis L. Young, Katz & Young, L.C., Kansas City, MO, for Plaintiff.

John D. Dunbar, Kelly S. Moothart, Daniels & Kaplan, P.C., Kansas City, MO, Gregory S. Muzingo, Wal–Mart Legal Team, Bentonville, AR, for Defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

Plaintiff brings this action alleging that defendant discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, breached an implied-in-fact contract of employment, and wrongfully discharged her in retaliation for filing a workers' compensation claim. The case is before the court on defendant's motion (Doc. 22) for summary judgment. For the reasons set forth below, the motion is granted with respect to the disability discrimination claim and denied in all other respects.

### I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on evidence submitted in summary judgment papers viewed in a light most favorable to the plaintiff.[1] Immaterial

---

1. Local Rule 56.1 requires plaintiff to controvert defendant's statement of facts with specific references to the evidentiary record. Plaintiff's reliance on unsupported blanket denials fails to comply with this rule. Plaintiff also fails substantially to support her own statement of facts with specific citations to the record or to submit the evidence cited in her statement of facts. Therefore, any statements of fact relying on evidence not adequately referenced in the record or not submitted with the summary judgment pleadings have been disregarded. *See Amro v. Boeing*

facts and facts not properly supported by the record are omitted.

On October 9, 1995, defendant hired plaintiff as an Order Filler at its Ottawa, Kansas Distribution Center. Plaintiff completed an application for employment that included the following acknowledgment:

I certify that the information on this application is correct and I understand that any misrepresentation or omission of any information will result in my disqualification from consideration for employment or, if employed, my dismissal. I understand that this application is not a contract, offer, or promise of employment and that if hired I will be able to resign at any time for any reason. Likewise, the company can terminate my employment at any time with or without cause. I further understand that no one other than the President of Wal-Mart Stores, Inc., or Vice President of its People Division has the authority to enter into an employment contract or agreement with me, and that my at-will employment can be changed only by a written agreement signed by the President of Wal-Mart Stores, Inc. I have read, understand, and agree to this statement.

Plaintiff further certified that she could perform several functions of the job, including constant lifting of up to fifty pounds, firm grip strength, repetitive hand action and fine manipulation.

Plaintiff received defendant's employee handbook during an orientation program. The handbook states that "We do not tolerate discrimination of any kind. **Not only is discrimination against our beliefs, it's against the law.**" Regarding attendance, the handbook adds:

Working during your scheduled hours is important for your success as a Wal-Mart associate. If you are not able to come to work, or will arrive at work late, you are expected to personally notify your supervisor each day before your scheduled time to report to work. Should you not report to work for three consecutive days without proper notification, we will consider this as your voluntary resignation.

The handbook concluded with the following acknowledgment signed by plaintiff:

This handbook is intended solely as a general information guide to let associates know about the current policies and programs Wal-Mart has in place. The policies and benefits presented in this handbook are for your information and do not constitute terms or conditions of employment. This handbook is not a contract.

Plaintiff alleges that during orientation, defendant's representative stated that her employment would be long-term and that she would be terminated only for cause. Moreover, defendant's representative told her that if she was ill, she needed to call in before the day begins, tell her supervisor what the problem is, and follow up with a note from her doctor.

On January 12, 1996, plaintiff received a formal verbal warning regarding her attendance because she had missed more than forty unscheduled hours over the preceding two months. Plaintiff then began having problems with her arms and shoulders in June 1996. She received a formal written warning on June 15, 1996 for having missed an additional thirty hours of work after the initial verbal warning, allegedly including a "no call, no show" on June 15, 1996. Plaintiff testified in her deposition that she first discussed her physical problems with her supervisor in July 1996, just prior to seeing a doctor. On July 29, 1996, defendant gave plaintiff a third formal warning for her continued poor attendance. Plaintiff disputes the purported justification for each of these warnings, alleging that, except for one "no call, no show" incident, she called in and had doctor excuses for each absence for which she received a reprimand.

Plaintiff further testified in her deposition that on August 12, 1996, she told her supervisor that she was in pain and could not pick up any objects. Later that day, plaintiff visited defendant's workers' compensation doctor. On August 14, 1996, plaintiff received a formal reprimand for failing to report her injury within defendant's 24-hour reporting policy. On August 22, 1996, plaintiff again visited defendant's doctor. After plaintiff returned to work later that day, defendant terminated her employment.

Co., No. 97-3049, slip op. at 1 n. 1, 1998 WL 380510 (10th Cir. July 8, 1998).

Plaintiff alleges that defendant refused to place her on light duty work, as it did for at least five other injured employees. She asserts that jobs were available sorting labels, running messages, or working in the security office. Subsequent to her discharge, plaintiff pursued a claim for workers' compensation. Since leaving defendant's employment, she has worked as a receptionist/secretary, apartment manager, and talent manager.

Additional facts will be provided as necessary.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

## III. ANALYSIS

### A. Disability Discrimination

■ The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The *McDonnell Douglas*[2] burden-shifting analysis applies to cases brought under the ADA. *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997). Absent direct evidence, plaintiff may use an indirect method to prove discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the indirect method, "plaintiff initially must raise a genuine issue of material fact on each element of the *prima facie* case." *Morgan,* 108 F.3d at 1323 (citing *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th Cir.1996) and *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)). To establish a *prima facie* case of disability discrimination, plaintiff must demonstrate: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, i.e., that she can perform the essential functions of the job with or without reasonable accommodation; and (3) that she suffered an adverse employment action based on her disability. *See Smith v. Midland Brake, Inc.,* 138 F.3d 1304, 1307–08 (10th Cir.1998). In support of summary judgment, defendant contends only that plaintiff is neither disabled nor qualified under the ADA.

### 1. Disabled

■ The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major

---

**2.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Initially, the court must address whether plaintiff has an impairment under the ADA. Plaintiff claims that she suffers from carpal tunnel syndrome and tendinitis. Plaintiff relies on portions of her own deposition testimony that consist primarily of hearsay regarding her doctors' diagnoses and treatment. Deposition testimony that would constitute inadmissible hearsay if the witness were testifying in court is inappropriate for summary judgment consideration. *Starr v. Pearle Vision, Inc.,* 54 F.3d 1548, 1555 (10th Cir.1995) ("Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment."). Excluding the inadmissible hearsay statements, plaintiff's only support for her ADA claim is her deposition testimony that she told her supervisor that her arms and her right wrist were causing her pain and that she could not lift any objects. This statement is also hearsay when, as is the case here, it is offered to prove that plaintiff was in pain and unable to lift any objects. Under Fed.R.Evid. 803(3), however, the statement is admissible as a hearsay exception because it is a statement of plaintiff's then existing physical condition. The court finds that plaintiff's statement to her supervisor is sufficient to create a genuine issue of material fact whether she had an impairment.

Next, the court must consider whether the impairment substantially limited a major life activity. *"Major Life Activities* means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1997) (emphasis in original). Lifting is a major life activity. *Lowe,* 87 F.3d at 1174. "Substantially limits" means "either the inability to perform a major life activity, or a severe restriction on the ability to perform a major life activity as compared to the general population." *Dutton v. Johnson County Bd. of County Comm'rs,* 859 F.Supp. 498, 505 (D.Kan.1994) (citing 29 C.F.R. § 1630.2(j)(1)). Plaintiff's evidence indicates that she was unable to lift anything. The court finds that such evidence is sufficient to create a genuine

issue of material fact whether her impairment substantially limited a major life activity.

### 2. Qualified

The Tenth Circuit requires a two-part analysis to determine whether a person is a "qualified individual with a disability." *Smith,* 138 F.3d at 1308. First, the court must determine whether the individual can perform the essential functions of the job. *Id.* Second, if the essential functions cannot be performed, the court must determine whether any reasonable accommodation would enable the individual to perform such functions. *Id.* The essential functions of a job are "functions that bear more than a marginal relationship to the job at issue." *Id.*

Defendant argues that plaintiff is not qualified because she cannot perform the essential functions of the job with or without reasonable accommodation. Defendant offers evidence that constant lifting is an essential function of the order filler position. Plaintiff acknowledged in her deposition that, in her job, she "pulled from bins, packed boxes, and stacked them." Moreover, plaintiff failed to controvert that lifting was an essential function of her job, arguing only that she could perform other functions of her job. Accordingly, the court finds that lifting was an essential function of the order filler job.

Plaintiff does not controvert that she was unable to lift. Thus, the court must determine whether there is a genuine issue of fact that plaintiff could perform the essential function with reasonable accommodation. *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1124 (10th Cir.1995). Plaintiff has the burden to make a facial showing that accommodation is possible. *Id.* Here, plaintiff does not suggest any accommodation that would have enabled her to perform the lifting required in her job. Accordingly, the court finds that plaintiff is not a "qualified individual with a disability" under the ADA. *See Smith,* 138 F.3d at 1308.

Plaintiff asserts that defendant failed to reasonably accommodate her disability by assigning her to other light duty

work, including sorting labels, working security, and delivering messages. "[W]hen a plaintiff is not qualified, even with reasonable accommodation, for the job which [she] currently holds (or, as here, from which [she] was terminated), the employing entity has no obligation to consider reassigning her to another position." *Id.* at 1312 (parenthetical included in original). An employer is not required to "reallocate job duties in order to change the essential function of a job." *Milton,* 53 F.3d at 1124. Neither is an employer required to accommodate an individual by making other employees work harder or longer hours. *Id.* at 1125. Because plaintiff failed to show that defendant could accommodate her in the order filler position, defendant had no duty to assign her to other jobs. *See Smith,* 138 F.3d at 1308. Accordingly, summary judgment is granted as to plaintiff's disability discrimination claim and that claim is dismissed.

### B. Workers' Compensation Retaliation

 Plaintiff alleges that she was terminated in anticipation of her filing a workers' compensation claim. The federal district court in Kansas has uniformly applied the *McDonnell Douglas* burden-shifting analysis in retaliatory discharge cases. *See Chaparro v. IBP, Inc.,* No. 95–3078, 1996 WL 733771, at *5 n. 3 (10th Cir. Dec. 24, 1996) (approving of the Kansas federal district court's treatment of retaliatory discharge claims), *cert. denied,* —— U.S. ——, 118 S.Ct. 53, 139 L.Ed.2d 18 (1997). To establish a prima facie claim of retaliatory discharge under Kansas law, plaintiff must demonstrate that: (1) she filed a claim for workers' compensation benefits or sustained an injury for which she might assert a future claim for such benefits; (2) her employer had knowledge of such injury or claim; (3) her employer discharged her; and (4) a causal connection exists between her protected activity or injury and her discharge. *Huffman v. Ace Elec. Co.,* 883 F.Supp. 1469, 1475 (D.Kan.1995). If plaintiff satisfies the prima facie case requirement, the burden shifts to defendant to

produce evidence of a legitimate, non-retaliatory reason for the discharge. *Bowers v. Bethany Medical Center,* 959 F.Supp. 1385, 1392 (D.Kan.1997). If defendant satisfies its burden, the plaintiff may avoid summary judgment only by asserting "specific facts that suggest defendant's explanation is merely pretext for a retaliatory discharge." *Id.*

Defendant argues that plaintiff cannot show that she engaged in any protected activity prior to her discharge.[3] Defendant, however, misapprehends the first element of the prima facie case, which may be satisfied simply by showing that plaintiff sustained a work-related injury prior to being terminated. *See Ortega v. IBP, Inc.,* 255 Kan. 513, 516, 874 P.2d 1188 (1994). Here, it is uncontroverted that defendant terminated plaintiff after she had sustained a work-related injury. Moreover, it is uncontroverted that defendant knew of plaintiff's injury.

 Defendant also argues in its brief that plaintiff's claim must fail because she is unable to perform the work. The court disagrees. "Under Kansas law, an employee with a workers' compensation claim may be lawfully discharged and cannot maintain a retaliatory discharge action if [she] is unable to perform [her] work." *Smith v. Midland Brake, Inc.,* 138 F.3d 1304, 1313 (10th Cir. 1998) (citing *Rowland v. Val–Agri, Inc.,* 13 Kan.App.2d 149, 153, 766 P.2d 819 (1988)). Retaliatory discharge claims are precluded only if the employee is lawfully discharged because she is unable to perform her work. *See, e.g., Rowland,* 13 Kan.App.2d at 150, 766 P.2d 819 (upholding termination due to plaintiff's inability to return to work); *see also Smith,* 138 F.3d at 1307 (same). Thus, the rule only protects employers who terminate employees for their inability to perform their job after suffering a work-related injury. Here, defendant does not allege in its statement of uncontroverted facts that it terminated plaintiff because she was unable to perform the job nor does it cite to the record in support of such an allegation. Defendant

---

**3.** Defendant confined its summary judgment arguments to those included in this Memorandum and Order. Defendant did not argue that it is entitled to summary judgment based on a legitimate, nondiscriminatory reason with respect to

the ADA or workers' compensation retaliation claims. Thus, plaintiff did not address pretext in her response and the court will not address the issue here.

asserts that it terminated plaintiff's employment because plaintiff violated attendance and injury-reporting policies, neither of which are related to her inability to perform the essential lifting requirements of the job. Accordingly, plaintiff has presented sufficient evidence to create a genuine issue of material fact whether defendant terminated her in anticipation of her filing a workers' compensation claim.

### C. Breach of Implied–in–Fact Contract

Plaintiff alleges that defendant violated an implied contract of employment prohibiting termination except for cause. "In Kansas, whether an implied contract exists which creates a property interest in employment normally is a question of fact for the jury." *Koopman v. Water Dist. No. 1,* 972 F.2d 1160, 1164 (10th Cir.1992) (citing *Allegri v. Providence–St. Margaret Health Center,* 9 Kan.App.2d 659, 684 P.2d 1031 (1984), *Morriss v. Coleman Co.,* 241 Kan. 501, 738 P.2d 841 (1987), and *Brown v. United Methodist Homes of Aged,* 249 Kan. 124, 815 P.2d 72 (1991)). "[S]ummary judgment remains 'rarely appropriate' in implied contract cases because of the necessity of determining both parties' subjective intent to form a contract." *Anglemyer v. Hamilton County Hospital,* 58 F.3d 533, 537 (10th Cir.1995) (citing *Kastner v. Blue Cross & Blue Shield of Kan., Inc.,* 21 Kan.App.2d 16, 24, 894 P.2d 909 (1995)).

The existence of an implied-in-fact contract depends upon the intent and understanding of the parties. *See Morriss,* 241 Kan. at 513, 738 P.2d 841. To determine the parties' intent, the finder of fact must look to several factors including:

> written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Id.*

In support of summary judgment, defendant argues only that disclaimers signed by plaintiff preclude the existence of an implied-in-fact contract. A disclaimer included in a manual, however, does not necessarily determine whether an implied contract exists, especially in light of contradictory terms in the manual and statements by the employer's representatives. *Id.* at 514, 738 P.2d 841. Here, plaintiff offers various statements made in the employment manual and made by defendant's representatives during orientation regarding absences. She also offers a statement by defendant's representative during orientation that plaintiff would not be terminated except for cause. The disclaimers do not necessarily preclude the existence of an implied-in-fact contract. The court finds that plaintiff has offered sufficient evidence to create a genuine issue of material fact whether an implied-in-fact contract existed between defendant and plaintiff. Accordingly, the motion for summary judgment is denied with respect to the breach of implied contract claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion (Doc. 22) for summary judgment is granted with respect to the disability discrimination claim and denied as to plaintiff's claims for workers' compensation retaliation and for breach of an implied-in-fact contract of employment.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**