Melodie McMACKINS, Plaintiff,

v.

**THE ELK GROVE UNIFIED SCHOOL DISTRICT, and Does 1 through 10, inclusive, Defendants.**

No. CIV. S–97–1289WBS/GGH.

United States District Court, E.D. California.

Nov. 3, 1998.

---

to, CA, for Elk Grove Unified School District, Defendants.

## MEMORANDUM AND ORDER

SHUBB, Chief Judge.

Plaintiff asserts claims under the Americans With Disabilities Act of 1990 (the "ADA"). In March 1995, while working as paraprofessional at a student store for defendant Elk Grove Unified School District (the "District"), plaintiff learned that she suffered from multiple sclerosis. A few months later she stopped working. Attempts to find her a less physically demanding position failed. In December of 1996, the District placed plaintiff on a "re-employment list."

Plaintiff alleges that the District discriminated against her in violation of the ADA by failing to reasonably accommodate her medical condition and by subsequently terminating her. The court grants defendants' motion for summary judgment.

### I. Factual Background.

The parties agree that plaintiff began working as a paraprofessional in the student store at James Rutter Middle School in approximately 1991 or 1992. She worked approximately 3 and 1/2 hours per day as the sole employee responsible for organizing and operating the student store.

In March of 1995, plaintiff was diagnosed with multiple sclerosis. She notified the District of her condition in late July of 1995. In the ensuing months she repeatedly asked the District to transfer her to a less physical and less stressful job. Over the course of the next year and a half, the District made various efforts to do so, but for reasons the court discusses in greater detail below, did not succeed. Effective December 6, 1996, the plaintiff was placed on the District's 39-month "re-employment list." [1]

### II. Legal Standard for a Grant of Summary Judgment.

Defendant moves for summary judgment of plaintiff's employment discrimination claim under 42 U.S.C. § 12112.[2] The court must

Ernesto J. Perez, Law Offices of Ernesto J. Perez, West Sacramento, CA, for Melodie McMackins, Paintiff.

Domenico Dante Spinelli, Edson LaPlante and Spinelli Wells Fargo Center, Sacramento, CA, for Elk Grove Unified School District, Defendants.

---

1. The parties dispute whether her placement on the list constituted a termination. For purposes of this motion, the court need not resolve this issue.

2. "No covered entity shall discriminate against a

grant summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party adverse to a motion for summary judgment may not simply deny generally the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Simply put, "a summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). The nonmoving party must show more than a mere "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. Analysis.

The District moves for summary judgment on four alternative grounds: (1) plaintiff is not a "qualified individual" under the ADA because she cannot perform the essential functions of the job she holds or desires with or without reasonable accommodation; (2) she is not a "qualified individual" under the ADA because she poses a "direct threat" of harm to herself and others working in her job; (3) the doctrine of judicial estoppel bars this action based on representations plaintiff made in seeking disability benefits; and (4) the District made a "good faith effort" to accommodate plaintiff. Because defendant is entitled to summary judgment on the first ground, the court does not reach the others.[3]

### A. Qualified Individual.

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability."

qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

42 U.S.C. § 12112(a). In order to prevail on an employment termination claim under the ADA, a plaintiff bears the burden of establishing each of the following elements:

(1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, without or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability.

*Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996) (quoting *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir. 1995)); *see also* 42 U.S.C. § 12111(8). The District attacks the second element. The District contends (1) that plaintiff cannot perform the essential functions of the job without reasonable accommodation and (2) that if she cannot, no reasonable accommodation exists that would allow her to perform those functions. *Smith v. Midland Brake, Inc.*, 138 F.3d 1304, 1308 (10th Cir.), *rehearing en banc granted*, 1998 WL 686450 (1998); *cf. School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (Rehabilitation Act).

### 1. Plaintiff's Ability to Perform the Essential Functions of her Job without Reasonable Accommodation.

The District has offered evidence that plaintiff could not "organize and operate the store," an "essential function" of her paraprofessional position. (*See* Job Description). Running the store entailed bending, climbing, lifting, stooping, and reaching. After September 1, 1995, the last date plaintiff worked in the position, plaintiff could apparently no longer perform those essential functions. Plaintiff, in a sworn statement on her Social Security Administration (SSA) claim form, admitted that:

I was diagnosed with MS in March 1995. My condition progressed so that I could

---

**3.** In moving for summary judgment on the ground of judicial estoppel, counsel for the District failed to cite *Johnson v. State of Oregon*, 141 F.3d 1361 (9th Cir.1998). There, the court of appeals explained that in evaluating the significance of disability benefits applications in ADA cases, courts should generally use "[s]traightforward summary judgment analysis, rather than theories of estoppel[.]" *Id.* at 1369.

not perform my job of lifting, climbing, standing, pushing, pulling and carrying necessary to running a student store. At the end of July, I asked for an accommodation to a less physical job. I began to use sick leave and vacation time while my employer attempted to find a suitable position for me. I was also given administrative leave while this search was on. However, I am now using my sick leave.

\*   \*   \*   \*   \*   \*

I am physically incapable of the labor required to operate a store by myself.. My strength is weak, my vision is sometimes affected, and my coordination and balance are unpredictable.

(Plaintiff's Disability Application Form.) In addition, plaintiff's treating physician testified that plaintiff was "unable to perform the duties of a student store professional," and that her condition made "any job except sedentary employment impossible." (Defendant's Undisputed Fact ¶ 25) (April 20, 1996 Report attached to Deposition of Dr. Wyrtzes, which is attached to the Declaration of D. Spinelli as Exhibit "2")

Based upon this showing, the burden shifts to plaintiff to set forth specific facts showing that a genuine controversy exists regarding whether she could perform the essential functions of the paraprofessional job without reasonable accommodation. Fed.R.Civ.P. 56(e). Faced with that burden, she points to evidence indicating that she continued to work until July 28, 1998 without incident (and even returned for one full day on September 1, 1998), and argues that because her job description did not include walking, climbing, lifting, reaching, or sitting, those functions of her job are not "essential."

■ Plaintiff's evidence does not present a "sufficient disagreement to require submission to a jury." *Kennedy*, 90 F.3d at 1481. First, the fact that plaintiff continued to work through the end of July, and returned for one day in early September, does not address whether she could perform the essential functions after those dates—especially given what plaintiff herself describes as a "progressive" condition. Second, her challenge to the job description misses the point. A useful job description focuses on the result or outcome of a job function, not solely on

the way it is customarily performed. 2 *Americans With Disabilities Act* § 7:116 at 158 (1998). Thus, the fact that the job description does not explicitly refer to "lifting, climbing, standing, pushing, pulling and carrying" does not render those functions unessential. The job description lists "organize and operate the Student Store" as a paraprofessional's duty and responsibility. Plaintiff's own sworn testimony establishes that "operating" (or in her words "running") the student store necessarily entails "lifting, climbing, standing, pushing, pulling and carrying." (SSA Disability Application Form). Plaintiff could not perform these activities.

### 2. Reasonable Accommodation.

Having determined that plaintiff could not perform the "essential functions" of the paraprofessional position without reasonable accommodation, the court next looks for evidence suggesting that she could do so with reasonable accommodation. The Court of Appeals recently explained that an ADA plaintiff must show "the existence of a reasonable accommodation" as an element of her prima facie case. *See Barnett v. U.S. Air*, 157 F.3d 744 (9th Cir.1998). The suggested accommodation must be specific and concrete, not merely hypothetical. *Id.* at 748.

At her deposition, plaintiff described the paraprofessional position as "very physical" and beyond her capacity to perform alone. (Plt. Depo. at 149:11–150:1). She now argues that the District could have allocated volunteer junior high-school students to perform the more physically demanding essential functions of her job. At the time of her initial diagnosis, plaintiff did not even ask for help in performing the physical aspects of her job precisely because she knew that those functions constituted the essence of the position itself. "I knew I couldn't do the lifting and climbing by myself. So that would require them to hire someone to help me, or to give me a student aide.. I didn't think they wanted to have two people doing one person's job ... I didn't think they would allow me to have a paid assistant." *Id.*

■ The law does not require an employer to reallocate or eliminate essential job functions in order to accommodate an employee

with a disability. *See Barnett,* 157 F.3d 744, 750; *Soto–Ocasio v. Federal Exp. Corp.,* 150 F.3d 14, 20 (1st Cir.1998) (and cases cited therein); *see also* 29 C.F.R. § 1630.2(o) App. (1998) ("An employer or other covered entity is not required to reallocate essential functions"). Plaintiff had sole responsibility for operating the store and was physically incapable of the labor required. Her own deposition testimony establishes that the volunteer student aides only worked during the lunch hour to make retail sales. (*See* Deposition of Melanie McMackins ("McMackins Depo.") at 34:6–37:7) Thus, assigning to student aides the "physical labor required to operate the store" would change the nature and extent of their position and reallocate to them essential functions of plaintiff's position, a result not contemplated by the ADA.

For the foregoing reasons, plaintiff has failed to raise a genuine issue of material fact concerning whether she could perform the essential functions of the paraprofessional position with or without reasonable accommodation.

### B. *Other Available Positions.*

Plaintiff also argues that she unsuccessfully requested reassignment to another available position and that the District failed to follow its own regulations implementing the ADA.

█ The federal courts of appeals disagree on whether an employer has a duty to reassign an existing employee who cannot perform his or her job with or without reasonable accommodation. *Compare Smith v. Midland Brake, Inc.,* 138 F.3d 1304, 1309 (10th Cir.1998) (no duty to offer alternative position) and *Myers v. Hose,* 50 F.3d 278, 284 (4th Cir.1995) (no duty to offer alternative position) *with Gile v. United Airlines,* 95 F.3d 492, 498 (7th Cir.1996). In the Ninth Circuit "[r]easonable accommodation 'may include ... reassignment to a vacant position,'" one with perhaps different "essential functions" than that originally held by the employee. 42 U.S.C. § 12111(9)(b); *Barnett,* 157 F.3d 744, 749; *see* 42 U.S.C. § 12111(8) (qualified individual with a disability "can perform the essential functions of the employment position that such individual holds

or desires ") (emphasis supplied). Again, however, plaintiff has the burden of establishing the specific existence of such an accommodation at the time the employer allegedly denied it; plaintiff may not rely on merely hypothetical suppositions and conjecture. *See Barnett,* 157 F.3d 744, 749 ("[i]n order to be reasonable, an accommodation cannot be merely hypothetical").

In *Barnett,* the plaintiff injured his back while working in a cargo position at San Francisco International Airport. After a leave of absence he returned to the position, but found that he could no longer perform the physical requirements. He subsequently transferred to a swing shift position in the mailroom, but lost that position when it became open for bidding and employees senior to him bid for it. His seniority would only have entitled him to the cargo position. The employer ultimately placed him on job injury leave because he was unable to perform all the duties of the cargo position. The court held that re-assignment to the mail room could have constituted a reasonable accommodation of plaintiff's disability.[4] *Id.* at n. 2 ("Barnett does not contend that he could perform the essential functions of the positions he desired without accommodation. He had to show, therefore, that he could perform the essential functions of an available position with reasonable accommodation").

█ Plaintiff points to no specifically available position the essential functions of which she could have performed with or without reasonable accommodation. *Id.* at 747. Moreover, the interactive process engaged in with plaintiff by the District indicates that she had every opportunity to find such a position. On October 16, 1995, the District called plaintiff and asked that she review the job binders in order to pull jobs which she felt were within her skills, physical restriction and part-time hours. (Defendant's Undisputed Fact ¶ 17). Subsequently she met with District representatives to discuss job options. (*Id.* ¶ 18). In that meeting, two possible alternative jobs were discussed: an Elementary Library Assistant position and a Typist Clerk II position. (*Id.*) Plaintiff con-

---

4. The court went on to hold, however, that the employer could not be required to waive its seniority policy at the expense of other employees and in favor of plaintiff. *See Barnett.*

sidered a Library Assistant Position, but concluded that she was not physically capable of performing the job. (*Id.* ¶ 19). Plaintiff considered the Typist Clerk II position in Instructional Services, but advised a District representative that the position required excessive file retrieval and movement to and from the work station. (*Id.* at ¶ 20).

Plaintiff considered and rejected numerous other opportunities. On May 31, 1996, District representatives met with plaintiff and discussed the possibility of plaintiff demonstrating accounting skills in a trial for Food Services Accounting Clerk I position. She worked well during this trial period. When a position became available, plaintiff was called back to take a practical test for the position. However, plaintiff ultimately withdrew from the application process. (*Id.* at ¶ 39). In July 1996, plaintiff asked to submit an application for the positions of Typist Clerk I and School Clerk I. Plaintiff was informed that the Typist Clerk I position had already been filled. Plaintiff ultimately decided the School Clerk I position was not appropriate for her, given her medical condition. Finally, the District contacted plaintiff on August 29, 1996, and asked whether she would like to observe the vacant front counter position in Human Resources. Plaintiff responded that she was not interested.

Plaintiff claims to have told a District representative that "she was willing to give [the Typist Clerk II position] a trial run." (McMackins Depo., 226:11–13). However, plaintiff presents no evidence suggesting that she could have performed the essential functions of this job with or without reasonable accommodation. In fact, plaintiff admits to having expressed "concerns" to the same representative that the job would be "very stressful" and "that it would require a lot of movement to and from the work station, and a lot of deadlines."

(*Id.* at 19–25).

Plaintiff also argues that she made three requests for reasonable accommodation that the District failed to act upon, contends that the District did not complete its reasonable accommodation evaluation, and protests that

the District did not conduct the "reasonable accommodation process" in good faith. Taken together or separately, this evidence fails to show a genuine controversy as to the required showing that a position existed, the essential functions of which plaintiff could perform. At best, the evidence suggests a failed or incomplete "interactive process."[5] But such a failing, if it did occur, does not expose an employer to liability under the ADA. *Barnett,* 157 F.3d 744, 751–52. ("Thus, an employer's decision not to engage in an interactive process may put it at peril, but it does not create liability independent from a resulting failure to accommodate the employee's disability"). An employer becomes liable only if a plaintiff shows that the employer incorrectly assessed "the existence of [a] reasonable accommodation." *Id.* For the reasons the court has already discussed, plaintiff has offered no evidence that would support such a showing.

*C. The District's Alleged Failure to Comply With Its Own Policies.*

█ Finally, plaintiff argues that the District failed to comply with its own administrative regulations implementing the ADA. "Absent proof of discrimination as defined by the ADA, an employer's failure to follow its own internal policies does not in itself constitute a violation of the ADA." *Smith,* 138 F.3d at 1310. This alleged failure by the District does not state a claim under the ADA.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment be, and the same hereby is, GRANTED. The Clerk is directed to enter judgment in favor of defendant the Elk Grove Unified School District and against plaintiff Melodie McMackins.

---

**5.** The phrase "interactive process" refers to discussion between the employer and disabled employee regarding the employee's limitations and possible accommodation. *Barnett,* 157 F.3d 744, 751.