Geneva M. SMITH, as the Administrator of the Estate of Robert W. Smith, deceased, Plaintiff,

v.

MIDLAND BRAKE, INC., Defendant.

No. Civ.A. 94–4165–DES.

United States District Court, D. Kansas.

May 1, 2000.

Leslie E. Diehl, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Robert W Smith, plaintiff.

Mary K. Babcock, Foulston & Siefkin L.L.P., Wichita, KS, Daniel M Shea, Paul R Beshears, Robert K Haderlein, Smith, Currie & Hancock, LLP, Atlanta, GA, for Midland Brake Inc, a division of Echlin, Inc., defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the defendant's motion for summary judgment (Doc. 109). For the reasons set forth below, the motion for summary judgment is denied in part and granted in part. Summary judgment is granted as to plaintiff's claims based on discriminatory acts occurring prior to July 26, 1992, the effective date of the ADA and denied as to all other claims.

## I. BACKGROUND

Plaintiff Robert W. Smith[1] ("Smith") was employed by defendant Midland Brake, Inc. ("Midland") from May 1986 until March 1993 in the light assembly department, assembling and testing small air valve components of air brakes for large vehicles. Smith's position required him to come into contact with various chemicals, solvents, and irritants, and Smith eventually developed chronic dermatitis on his hands and muscular injuries. As a result of the injuries, physicians restricted plaintiff to avoid contact with irritants and on several occasions made plaintiff stop work for limited periods.

---

1. Robert W. Smith died while this case was on appeal. Geneva M. Smith, as administrator of the estate of Robert Smith, filed a suggestion of death and a motion to substitute herself as the plaintiff, which the Tenth Circuit granted. In the interest of clarity, the court will refer to Robert Smith as the plaintiff.

Between 1990 and 1992, Smith filed worker's compensation claims for his injuries. Midland attempted to accommodate plaintiff's limitations by giving him gloves and assigning him to duties that involved less lifting and exposure to irritants. On May 5, 1992, Smith's physician took him off work and Smith remained off work until he was discharged. Smith is considered permanently disabled and unfit to work in the light assembly department due to his injury. On October 15, 1992, Smith applied for Social Security disability benefits as a result of his injuries. On September 23, 1993, the Social Security Administration ("SSA") awarded disability benefits, determining that Smith had been under a disability since July 5, 1992. On March 3, 1993, Midland settled Smith's workers' compensation claim for $20,000. On or about that same day, Midland terminated Smith's employment, citing an inability to accommodate Smith's skin sensitivity as the reason for discharge.

The parties dispute exactly what happened between May 1992 and March 1993. Smith argues that although he was unable to work in the light assembly department, there were numerous other positions he was qualified for and he could have obtained a medical release to perform the positions if he was made aware of them. Midland claims that it made a good faith effort to accommodate Smith, but Smith was not qualified to perform any available position at Midland based on his representations to the SSA. Midland argues that Smith cannot reconcile his SSA representations that he was totally disabled and unable to work with an ability to perform the essential functions of any available job at Midland, with or without reasonable accommodation.

Smith filed a complaint in the United States District Court for the District of Kansas on September 7, 1994, claiming he was discharged in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. In addition, Smith asserted that Midland fired him in retaliation for pursuing his workers' compensation claim. The district court granted summary judgment in favor of Midland on each claim. Smith v. Midland Brake, Inc., 911 F.Supp. 1351 (D.Kan.1995). As to the ADA claim, the district court held that Smith was not a "qualified individual with a disability" because Smith failed to provide Midland with a medical release to return to work and Smith's sworn statements to the SSA that he was totally disabled and unable to work.

On appeal, a three-judge panel affirmed the district court's decision, but for a different reason as to the ADA claim. Smith v. Midland Brake, Inc., 138 F.3d 1304 (10th Cir.1998) (Briscoe dissented). The panel agreed that Smith was not a "qualified individual with a disability," but based that conclusion upon the fact that Smith was unable to perform his existing job, even with accommodation. On rehearing en banc, the Tenth Circuit addressed only the ADA issue and reversed. Smith v. Midland Brake, Inc., 180 F.3d 1154 (10th Cir.1999). The court held that an employee can be a "qualified individual with a disability" when the employee cannot perform the essential functions of his existing job, with or without reasonable accommodation, but can perform the essential elements of available jobs, with or without reasonable accommodation. The court recognized that the employee has a right to reassignment under the ADA, provided the reassignment is a reasonable accommodation under all the circumstances.

Upon remand, Midland again filed a motion for summary judgment. Midland claims Smith was not a "qualified individual with a disability" because Smith's statements to the SSA are inconsistent with the ability to perform any available job at Midland, with or without reasonable accommodation, and Smith cannot offer a sufficient explanation for the inconsistency.

## II. STANDARD OF REVIEW

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998). The court's function is not to weigh the evidence or determine whether the claims have merit, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

Midland presents three arguments in its motion for summary judgment. First, Midland claims Smith was not a "qualified individual with a disability" because the representations he made to the SSA were inconsistent with the ability to perform any available job at Midland, with or without reasonable accommodation. Second, Midland argues that Smith's ADA claims are barred for failure to timely file a charge of discrimination with the appropriate administrative agency. Finally, Midland argues that the ADA does not apply retroactively to alleged discriminatory acts which arose prior to the ADA's effective date of July 26, 1992.

### A. Effect of Sworn Statements to SSA

 The Tenth Circuit has adopted the burden-shifting format set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as a framework for analyzing ADA claims when no direct evidence of discrimination exists. *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995). To survive summary judgment, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411

U.S. at 802, 93 S.Ct. 1817. Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If the defendant employer meets this burden, " 'it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as. to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.' " *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 327 (10th Cir. 1996) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1996)).

■ To establish a *prima facie* case on a ADA claim of failure to accommodate by offering reassignment to a vacant position, the employee must show that:

(1) The employee is a disabled person within the meaning of the ADA and has made any resulting limitations from his or her disability known to the employer;

(2) The preferred option of accommodation within the employee's existing job cannot reasonably be accomplished.

(3) The employee requested the employer reasonably to accommodate his or her disability by reassignment to a vacant position, which the employee may identify at the outset or which the employee may request the employer identify through an interactive process, in which the employee in good faith was willing to, or did, cooperate;

(4) The employee was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company that the employee must, at the time of the summary judgment proceeding, specifically identify and show were available within the company at or about the time the request for reassignment was made; and

(5) The employee suffered injury because the employer did not offer to reassign the employee to any appropriate vacant position.

*Smith,* 180 F.3d at 1179. Midland argues that Smith cannot establish the fourth element because he was not qualified to perform any vacant position at Midland, with or without reasonable accommodation, based on his sworn assertions to the SSA that he was permanently and totally disabled.

In plaintiff's October 15, 1992, application for disability insurance benefits, plaintiff certified that he "became unable to work because of [his] disabling condition on July 5, 1992" and that he was "still disabled." Following the SSA's denial of disability benefits, the plaintiff submitted a request for reconsideration on January 7, 1993. The plaintiff's request contained the following statement: "I disagree with the determination made on claim for disability-worker ... benefits because I still feel that I am totally disabled and unable to work." On April 12, 1993, the SSA denied the plaintiff's request for reconsideration. On April 16, 1993, the plaintiff requested a hearing by an administrative law judge ("ALJ"). In his request, the plaintiff reiterated that he was still "totally disabled and unable to work." On September 23, 1993, the ALJ determined that the plaintiff had been disabled since July 5, 1992, and that the plaintiff was entitled to disability insurance benefits.

■ The Supreme Court recently addressed how sworn statements of disability made to the SSA impact an ADA claim that the employee was disabled but able to work. *See Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). The Court recognized that statements made to the SSA to support a "general" finding of disability do not necessarily conflict with a finding of ability to perform the essential functions of a "specific" job in an ADA claim. *Id.* at 1602–03 ("an SSDI claim and an ADA claim can comfortably exist side

by side"). The Court acknowledged that in some cases the representations made to the SSA may genuinely conflict with the ADA claim. In such cases, the plaintiff must offer a sufficient explanation for the apparent conflict:

> An ADA plaintiff bears the burden of proving that she is "a qualified individual with a disability"—that is, a person "who, with or without reasonable accommodation can perform the essential functions of her job." 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case at least if she does not proffer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather she must proffer a sufficient explanation.

*Id.* at 1603. To defeat summary judgment, the proffered explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 1604.

█ In addition to the general statement "I am totally disabled and unable to work," Smith made the following specific factual representations to the SSA: hands and fingers were unusable the majority of the time due to cracking and throbbing, limited hearing ability, voice weakens to a whisper after minimal use, no contact with irritants, no lifting over 25 pounds, no raising the arms above the head, avoid repetitious arm movements, and avoid sitting or standing for any length of time. (Def.Org.Mem.Supp.Sum.J.Ex. H and I.) Under *Cleveland,* Smith must proffer a sufficient explanation for how he could perform an available position at Midland, with or without reasonable accommodation,

in light of the factual representations he made to the SSA.

Smith claims there is no inconsistency between his representations to the SSA and his ADA claim. First, Smith argues the ALJ did not find that he was permanently and totally disabled from performing all jobs. The ALJ found that "there are no jobs in significant numbers which [Smith] can perform." Finding a disability based on a lack of jobs in "significant numbers" jobs is different than finding that there are "no" jobs the plaintiff could perform. In addition to the obvious semantic distinction, Smith argues that the ALJ's decision is based on medical evidence which clearly stated that Smith could perform other work.

The social security record is filled with medical statements and evaluations which demonstrate that plaintiff could perform other work. On May 11, 1992, Dr. Herman Solomon, plaintiff's treating physician, clearly stated, "[T]he patient is virtually 100 % disabled from doing the type of work that he has done previously. However, in terms of general disability, he certainly is capable of performing other kinds of jobs." (Pla.Org.Mem.Opp.Sum.J.Ex.17.) On June 16, 1992, Dr. Glen D. Singer wrote a letter agreeing with Dr. Solomon's opinion and reaffirming the need for Smith to avoid exposure to irritants. (Pla.Org.Mem.Opp.Sum.J.Ex.20.) Dr. Singer never stated plaintiff was unable to work.

The social security record also contained the December 8, 1992, and April 1, 1993, results of Dr. N. Berner's evaluation of Smith. Dr. Berner found that Smith could occasionally lift twenty pounds, frequently lift ten pounds, unlimited ability to push and pull, stand or walk with normal breaks for six hours in an eight hour day, and sit with normal breaks for six hours in an eight hour day. Smith also had no postural limitations, no manipulative limitations, limited hearing, unlimited ability to speak, and the only environmental limitation was to avoid fumes, gases, etc.

(Pla.Org.Mem.Opp.Sum.J.Ex.22.) The record also included Dr. John Chamberlin's November 14, 1992, description of "fine superficial fissuring" of the hands. Dr. Chamberlin acknowledged that Smith had good grip strength, dexterity preserved, his signature was free flowing, and contact with irritants would prove painful. (Pla.Org.Mem.Opp.Sum.J.Ex.23.) These medical opinions confirm that the ALJ did not find Smith unable to perform all work.

The medical opinions also place Smith's sworn statements to the SSA in context. Dr. Wesley D. Stone testified that his sworn statement that Smith was permanently and totally disabled was not inconsistent with Smith's ability to perform work which did not require exposure to irritants, repetitive motion, or lifting more than 25 pounds. (Depo.58–60.) Dr. Singer testified that his statement "unable to work" meant that there were no available jobs he was aware of within Smith's medical restrictions and that he would have released Smith to perform any available jobs within his medical restrictions. (Depo. Mar. 20, 1995, p. 90.) It is not unusual for a patient to adopt his doctor's opinion about his medical condition. If Smith adopted his physician's opinions in his own representations to the SSA, his statement "I am totally disabled and unable to work" was referring to his position in light assembly and other positions outside his medical restrictions.

In addition to placing Smith's general representations in context, the medical opinions also explain Smith's specific statements regarding ability to sit and stand and use of fingers and hands. As to Smith's lay statement that he must avoid sitting or standing for any length of time, Dr. Berner medically described his condition as able to stand or walk with normal breaks for six hours in an eight hour day, and able sit with normal breaks for six hours in an eight hour day. Plaintiff could perform several available jobs where he could alternate sitting and standing. An explanation for Smith's statement that his hands and fingers were unusable the majority of the time is more problematic. However, at least one physician acknowledged that use of Smith's hands could be "quite painful," however, the doctor felt plaintiff could be accommodated. (Solomon Depo. 39–45.) Dr. Solomon testified that plaintiff's dermatitis would not prevent him from operating a keyboard, general clerical work, or performing a drafting position. (Depo.44, 70–71, 118–19.) In addition, none of the physicians placed medical restrictions on Smith's use of his hands and fingers. It is possible that plaintiff's statement that his hands were unusable may not have included the possibility of reasonable accommodation or referred only to his position in light assembly.

Smith argues his specific factual representations are not inconsistent with the ability to perform several available positions at Midland, with or without reasonable accommodation.[2] These jobs include picker packer (available July 1992, November 1992), flexisticks (available July 1992, March 1993), kit packaging (available July 1992), drafter (available October 1992), keyboard (available October 1992), and industrial engineering technician (available February 1993). *Jon Anderson,* registered nurse and Midland's Health and Safety Coordinator, testified that he believed these jobs were within Smith's restrictions and Smith could perform the jobs had he been released by a physician. (Depo.Vol. III p. 5, 19–20, 24–25; Vol. VI p. 70; Vol VII p. 33–36, 46–49.) Smith presents evidence that Dr. Singer actually released him to work in a picker/packer position in June of 1992 and that same

---

**2.** Judge Briscoe recognized that "[t]here was evidence [plaintiff] was physically able and otherwise qualified for at least two of the positions, a position in flexisticks and a kit assembly position, both of which became vacant in July 1992." *Smith,* 138 F.3d at 1318 (Briscoe dissent). "Whether Smith was qualified for or could perform the positions that became vacant in July was a question of material fact." *Id.* "There is evidence that at least one position, flexisticks, remained vacant after the effective date of the ADA." *Id.*

position was also available in November 1992. (Singer Depo. Mar. 20, 1995, 45.)

Considering all the evidence in the light most favorable to Smith and drawing all reasonable inferences in favor of him, Smith has sufficiently explained the apparent conflict between his SSA statements and claim of ability to work. This is not a situation where the plaintiff made an "about-face concerning the extent of the injuries." *Motley v. New Jersey State Police,* 196 F.3d 160, 165 (3rd Cir.1999). The court believes Smith's proffered explanation is sufficient to support a "reasonable juror's concluding that, assuming the truth of ... the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of [an available] job, with or without 'reasonable accommodation.'" *Cleveland,* 119 S.Ct. at 1604. Therefore, Smith's sworn statements to the SSA will not preclude him from establishing an ADA claim.

### B. Timeliness of ADA Claims

To bring an ADA claim, an employee must file a discrimination charge with the state agency within 300 days after the alleged discriminatory act occurred to exhaust his administrative remedies. 42 U.S.C. § 2000e–5(e); *Amro v. Boeing Co.,* 951 F.Supp. 1533, 1553 (D.Kan.1997). Smith filed a charge of discrimination with the EEOC on November 27, 1993, alleging Midland discriminated against him by failing to place him in another job from July 1992 until he was discharged on March 3, 1993. From July 26, 1992, through March 3, 1993, there were thirty-seven (37) job requisitions for seventy-eight (78) positions. Midland argues that Smith's ADA claims are limited to those discriminatory events occurring within the 300–day period of filing the EEOC charge, i.e. after January 27, 1993.

Smith contends that the continuing violation doctrine allows him to rely upon conduct occurring before January 27, 1993, to establish his ADA claim. The continuing violation doctrine permits inclusion of events outside the statutory time limit if Smith can show either "(1) a series of related acts taken against a single individual, one or more of which falls within the limitations period, or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period." *Purrington v. University of Utah,* 996 F.2d 1025, 1028 (10th Cir.1993). Smith claims a continuing violation under both theories.

To prove a continuous violation based on a series of related acts, the plaintiff must show a "dogged pattern" of discrimination as opposed to discrete, unrelated, isolated or sporadic acts. *Purrington,* 996 F.2d at 1028. There is not a well-defined standard to determine when incidents are sufficiently related to be a continuing violation. *Id.* The Tenth Circuit has adopted the following nonexclusive factors to aid the court in determining whether a violation is continuous:

> (i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences would continue even in the absence of a continuing intent to discriminate.

*Id.* (quoting *Martin v. Nannie and the Newborns, Inc.* 3 F.3d 1410, 1415 (10th Cir.1993)).

Smith has come forward with enough facts to raise an issue for trial on whether Midland engaged in a continuous course of discrimination. The failure to reassign Smith to an available position, the essential functions of which he could perform, on numerous occasions clearly involves the same type of discrimination. *See Bodiford v. Alabama,* 854 F.Supp. 886 (M.D.Ala.1994) (finding a continuous violation when an employer denied plaintiff's repeated requests for transfer to a vacant position based on his disability).

The frequency element weighs in favor of Smith. The evidence shows that Smith requested reassignment to an available position on a weekly basis. Smith presents evidence, in the form of physician testimony and defendant's agent testimony, that he could perform the essential functions of several jobs including picker packer (available July 1992, November 1992), flexisticks (available July 1992, March 1993), kit packaging (available July 1992), drafter (available October 1992), keyboard (available October 1992), and industrial engineering technician (available February 1993). At least one position, flexisticks, was open on the day Smith was terminated, March 3, 1993, which is within the statutory time period. These facts are distinguishable from those in *Purrington v. University of Utah,* cited by defendant. In *Purrington,* the Tenth Circuit found that observing one incident of sexual harassment and hearing about another incident of sexual harassment over one year after the alleged harassment of the plaintiff was not a "dogged pattern." *Purrington,* 996 F.2d at 1028–29. Smith was not reassigned to numerous available positions, the essential functions of which he could perform, over an eight-month period. The frequency factor weighs heavily in favor of Smith.

 The factor of permanence also weighs in favor of Smith. "Permanency depends on what the plaintiff knew or should have known." *Martin,* 3 F.3d at 1415. Midland argues that Smith was aware of the available positions because he went to the plant weekly to discuss available positions with Jon Anderson or Cathy Lynch and check the bulletin board to see what vacancies existed. However, Jon Anderson testified that he did not discuss several available positions with Smith or Smith's doctor, including kit packaging (available July 1992), flexisticks (available July 1992 and March 1993), and drafter (available in October 1992). (Depo.Vol. VI

p. 70; Vol. VII p. 37, 42.) Anderson also testified that there were several positions that had no written job description or requisition form. (Depo.Vol. III p. 21–24.) Catherine Lynch, Human Resources Director, also testified that there were positions that were not posted. (Depo.Vol. I p. 84.) Of those positions that were posted, it is unclear whether Smith actually saw these positions. Because Smith was not made aware of several available positions, the permanency factor also weighs in favor of a continuous violation.

Looking at the facts in the light most favorable to plaintiff and drawing all reasonable inferences in favor of the plaintiff, the court finds a reasonable jury could conclude that Midland continuously maintained the discriminatory practice of refusing to provide the reasonable accommodation of reassignment to Smith. Therefore, summary judgment is not proper.

Smith also argues that Midland maintained a company-wide policy of discrimination both before and during the limitations period. Because the court finds a continuing violation under the related acts theory, the court expresses no opinion as to the existence of a company-wide policy.

### C. Claims Prior to the Effective Date of the ADA

 Midland also argues that it is entitled to summary judgment on each of Smith's claims which arose prior to July 26, 1992, the effective date of the ADA.[3] The ADA is not applied retroactively. *See Buchanan v. City of San Antonio,* 85 F.3d 196, 197 (5th Cir.1996); *Bacon v. Great Plains Mfg., Inc.,* 958 F.Supp. 523, 528 (D.Kan.1997). The duty to reassign Smith only extends to positions that were vacant after July 26, 1992, the effective date of the ADA. Therefore, to the extent Smith's claims are based on discriminatory acts occurring before July 26, 1992, the motion for summary judgment is granted.

---

**3.** Plaintiff does not respond to this argument in his Memorandum in Opposition to Summary Judgment (Doc. 115).

IT IS THEREFORE BY THE COURT **ORDERED** that the defendant's motion for summary judgment (Doc. 109) is denied in part and granted in part. The motion is granted as to plaintiff's claims based on discriminatory acts occurring prior to July 26, 1992, the effective date of the ADA and denied as to all other claims.