Edward **RANDO**, Plaintiff,

v.

**TEXACO REFINING AND MARKETING INC. and Equilon Enterprises LLC, Defendants.**

No. 99–4083–DES.

United States District Court, D. Kansas.

Aug. 31, 2001.

William L. Fry, Tulsa, OK, for Plaintiff.

Jill Frost, Franke & Schultz, P.C., Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' Motion for Summary Judgment (Doc. 14) brought pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiff has filed a response (Doc. 24), and defendants have filed a reply to plaintiff's response (Doc. 27). Plaintiff alleges violations under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1870, 42 U.S.C. § 1981. For the following reasons defendants' motion is granted.

## I. BACKGROUND

The following facts concerning plaintiff's claims are either uncontroverted or, if controverted, are construed in a light most favorable to the plaintiff.

Plaintiff was born in Iran but is of Assyrian descent. He speaks with a slight accent and has dark skin. Plaintiff began working for defendants in 1977 at the El Dorado, Kansas, plant. During his tenure with defendants, plaintiff obtained welding skills and became a Mechanical Specialist in the plant's Maintenance Department. It is uncontroverted that during his time with defendants, plaintiff was often subjected to ethnic slurs such as "camel jockey" by a manager in his department.

Plaintiff suffered a neck injury in 1986 when he was hit by a concrete slab. After recuperating from this injury, he returned to work. In 1990, plaintiff underwent surgery for a herniated disc in his neck. Again, after the surgery, he returned to work, but was put on light duty for about four months. Subsequently, in 1993, plaintiff injured his neck again, but continued to work. In 1994, plaintiff applied and was considered for the job of Area Foreman, but was not awarded the position. Plaintiff was on the job until July 31, 1995, when he underwent shoulder surgery and was placed on medical leave. While on medical leave plaintiff continued to experience neck and shoulder problems. Finally, in June of 1996, plaintiff underwent a final surgery to his neck for two herniated discs. Following this surgery plaintiff underwent a work hardening program that caused severe pain and stiffness. He ended this program in November of 1996.

On November 26, 1996, plaintiff's doctor issued a work release allowing plaintiff to return to work with permanent restrictions including: occasional twenty pound lift limit, frequent ten pound lift limit, limited overhead reaching with right arm, approximately one and a half pound weight limit for welding hood, occasional climbing of ladders, no work in cramped quarters and moderate pulling, twisting and pushing. (Pl.Ex. 8 and 9). On December 17, 1996, defendants' human resource managers met with plaintiff and his wife to discuss the option of returning to work. Because plaintiff was still suffering from the pain caused by the work hardening program, he indicated he was unable to return to work at any position in the plant. The human resources manager, Dolores Rogers, advised plaintiff that defendants would sever the employment relationship. On December 18, 1996, the very next day, plaintiff informed defendants he would be able to return to work if the company provided him an adjustable, tiltable welding table and an air lift.

Meanwhile, representatives from plaintiff's union began contacting the defendants' human resources department, requesting defendants return him to work quickly after his surgery. The first letter from the union, dated July 16, 1996, requested that defendants return plaintiff to work in "some capacity." (Pl.Ex. 10). Plaintiff sent a similar letter on the same day requesting to be put back to work. (Pl.Ex. 11). Also, Mike Maloney ("Maloney") a union representative, contacted defendants' human resources department on many occasions. According to Maloney's affidavit, defendants' human resource representatives, "kept insisting that Mr. Rando was too disabled to work [at the plant]," and they "remained adamant that the company was not going to take him back and that he had to take the company's Permanent Total Disability Plan." (Maloney Aff. at 3). Additionally, plaintiff's workman's compensation attorney wrote a letter to defendants, dated January 6, 1997, demanding plaintiff be accommodated and put back to work. (Pl.Ex. 13). Any refusal to do so, stated the letter, would be seen as a violation of plaintiff's rights under the ADA.

In late January of 1997, the position of Maintenance Planner was posted at the refinery. Plaintiff did not know about the posting and did not apply for the position. At the time plaintiff had been on medical leave for over a year and a half. Plaintiff is unaware of the qualifications of the individual who received the job of Maintenance Planner.

After plaintiff's continuous requests to return to work, defendants hired Ron Combs, a vocational rehabilitation specialist to determine whether plaintiff's permanent restrictions would prevent him from performing the duties of a Mechanical Spe-

cialist. (Doc. 15, at 5). On February 24, 1997, Mr. Combs issued a report finding there were no reasonable accommodations available that would allow plaintiff to perform all the tasks of a Mechanical Specialist. (Def.Ex. B). Additionally, in April of 1997 plaintiff met with Jeff Krafve, a manager in the maintenance department, and Alan Kelly, plaintiff's co-worker. The purpose of the meeting was to convince Mr. Krafve that plaintiff could perform the functions of his job. Mr. Krafve attempted to bring plaintiff back to work, but the human resources department adhered to it's original position taken on December 17, 1996, i.e. that plaintiff could not return to work. On July 1, 1997, plaintiff filed a complaint for discrimination against the defendants jointly with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC").

On May 29, 1998, plaintiff penned a letter to defendants once again requesting his return to work. (Def.Ex. C). In a letter dated July 6, 1998, defendants replied to plaintiff's letter stating plaintiff would have to provide the company with an updated medical certificate showing his medical condition had changed. (Def.Ex. D). On November 23, 1998, plaintiff provided defendants with a medical certificate listing his permanent restrictions. (Pl.Ex. 9). Once again, defendants hired Ron Combs to determine whether plaintiff could perform the essential functions of a Mechanical Specialist. In a report dated December 3, 1998, Mr. Combs affirmed his original findings from the previous report concluding plaintiff would be unable to safely perform the functions of the job. Plaintiff remained on a no-pay leave of absence.

Plaintiff began doing contract welding work for Treatco, Inc., which required working full days performing essentially the same tasks required of a Mechanical Specialist at defendants' El Dorado plant. On October 2, 1998, a video was made of plaintiff demonstrating his work functions at Treatco. After viewing the video tape, defendants' human resources representatives continued to refuse plaintiff's requests to return to work.

Plaintiff's grievance with defendants was arbitrated pursuant to the terms of the collective bargaining agreement between the defendants and the plaintiff. On April 12, 1999, the arbitrator found plaintiff's permanent medical restrictions on lifting and reaching rendered him unable to perform the functions of a Mechanical Specialist. The plaintiff was released shortly after the arbitration hearing.

Finally, during the course of plaintiff's litigation in this matter he has applied to the Social Security Administration ("SSA") on multiple occasions requesting Social Security Disability Insurance ("SSDI"). On each occasion plaintiff has represented to the SSA that he was unable to work due to his disabilities. (Def. Ex. G, H, I, and J).

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) ("The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues."). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Title VII

#### 1. Statute of Limitations

■ Defendants assert that the incidents supporting plaintiff's Title VII race/national origin discrimination claim are time-barred. According to 42 U.S.C. § 2000e–5(e), a charge of discrimination must be filed with the EEOC within 300 days of the alleged unlawful act.[1] This filing limitation is a prerequisite to bringing a Title VII claim. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310 (10th Cir.1999).

Plaintiff filed his original claim of discrimination jointly with the EEOC/KHRC on July 1, 1997. The court will only consider events occurring 300 days prior to the EEOC/KHRC filing.[2] Under this time frame, plaintiff's allegations that defendants failed to promote him on account of his race in 1994 will not be taken into

---

1. The 300–day limitation applies in those states such as Kansas that have statutorily prohibited discrimination, otherwise, the limit is 180 days.

2. Plaintiff failed to argue the "continuing course of conduct" doctrine, which, when applicable, may allow a court to consider events occurring more than 300 days prior to a plaintiff's EEOC/KHRC filing. *See Bullington,* 186 F.3d at 1310.

consideration by the court. Additionally, plaintiff admits that July 31, 1995, his last day of work, would have been the final occasion in which he could have been subjected to ethnic slurs such as "camel jockey." Thus, defendants' admission that plaintiff was subjected to ethnic slurs will not be considered by the court because such taunting could only have occurred more than 300 days prior to plaintiff's EEOC filing.

The court is left with only two of plaintiff's allegations to consider. First, the court will decide whether defendants violated Title VII's prohibition against national origin and/or race discrimination when it failed to return plaintiff to work after his 1996 surgery. Second, the court will address whether plaintiff's national origin and/or race was a consideration in defendants' failure to promote him to the position of Maintenance Planner in January of 1997.

### 2. Title VII Framework

Under Title VII, a plaintiff must prove he or she was the victim of intentional discrimination. *EEOC v. Wiltel, Inc.*, 81 F.3d 1508, 1513 (10th Cir.1996) (citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). Plaintiff may carry this burden in one of two ways: "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir.1999) (internal quotation marks and citation omitted).

Plaintiff has not presented any direct evidence of discrimination, i.e., " 'evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.' " *Id.* (quoting Black's Law Dictionary 460 (6th ed.1990)) (alterations in

original). Instead, plaintiff has relied on indirect evidence to support his discrimination claims. The court must analyze plaintiff's indirect evidence of discrimination under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, a plaintiff has the initial burden of satisfying the prima facie requirements of a Title VII discrimination case. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir.1995). If the plaintiff can meet this burden, then the defendant must offer a "facially nondiscriminatory reason for the challenged employment action." *Shorter*, 188 F.3d at 1208 (internal citation omitted). Finally, if the defendants offer a nondiscriminatory reason, then the burden shifts back to the plaintiff to show that defendants' proffered reason is merely pretextual. *Id.*

### 3. Failure to Return Plaintiff to Work

■ Plaintiff alleges defendants refused to return him to work after his 1996 surgery because of his race and/or national origin in violation of Title VII. To establish a prima facie case in this context, plaintiff is required to show: (1) he is a member of a protected class; (2) he was qualified for the job; (3) despite his qualifications, he was discharged and/or prohibited from returning to work; and (4) the job was not eliminated. *Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) (internal citations omitted); *See also Amro v. The Boeing Co.*, 232 F.3d 790, 797 (10th Cir.2000) (stating that "the prima facie case is not an inflexible doctrine. In certain cases involving discrimination falling outside the more traditional categories of hiring and firing, it may be modified."). The court finds that plaintiff has met this burden.

Plaintiff has made the first showing of his prima facie case by establishing that he is a member of a protected class by way of race and national origin. He was born in Iran, is of Assyrian descent, has dark skin, and speaks with a slight foreign accent. Defendants' contention that "plaintiff cannot show that he was considered a protected class member" is completely without merit. *See Amro*, 232 F.3d at 798 (finding persons of Lebanese ancestry are members of protected class); *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir.1991) (holding that plaintiff who was Iranian is a member of a protected class); *Mohammed v. Callaway*, 698 F.2d 395, 398 (10th Cir.1983) (opining that plaintiff of Mexican–Pakistani origin is a member of a protected class).

As to the second element of the prima facie case, plaintiff maintains he is qualified for the position of Mechanical Specialist. (Pl. Aff. at 6; Pl. Depo. at 99–102, 105–107, 112–117). The Tenth Circuit has clearly identified the scope of this determination:

> At the prima facie stage, the court need only conclude that the plaintiff has shown through credible evidence, including her own testimony, that she was minimally qualified for the position she sought, even if the defendant disputes that evidence.... We will not allow [the defendant] to "short circuit" the *McDonnell Douglas* analysis by challenging [plaintiff's] qualifications at the prima facie stage.

*Bullington*, 186 F.3d at 1316, n. 11. Plaintiff presents affidavits from co-workers, union representatives, and plaintiff himself claiming at all times after January of 1997 plaintiff has been able to perform the duties required of a Mechanical Specialist and was qualified for the job. (Pl. Aff. at 6; Maloney Aff. at 3–4; Kelley Aff. at 4; Burk Aff. at 2–4). Notwithstanding plaintiff's injuries, this court finds, based on the affidavits presented to the court, plaintiff has sufficiently demonstrated his qualifications.[3]

The third prong of the prima facie case has also been established because although plaintiff was qualified for the position and despite his multiple requests to return to work, defendants refused to put plaintiff back on the job. First, on December 18, 1996, one day after telling the human resources supervisors that he was unable to work, plaintiff informed the defendants' staff that he could return to work with the assistance of an adjustable, tiltable welding table and an air lift. Second, on January 6, 1997, plaintiff's attorney, who handled his worker's compensation claim, wrote a letter to defendants stating he could perform shop welding and should be returned to work. (Pl.Ex. 13). Finally, on May 29, 1998, plaintiff wrote a letter to defendants requesting his return to work. Defendants refused to return plaintiff to work at all times. Thus, despite plaintiff's qualifications, defendants continuously refused plaintiff's request to return to work.

Finally, the last element of plaintiff's prima facie case has been met because there is no indication that the job of Mechanical Specialist had been eliminated. Thus, the court will assume that the position which plaintiff sought remained open and was not eliminated.

---

**3.** In the documents presented to the court, the parties address plaintiff's qualifications as a Mechanical Specialist at length. Such discussion only takes place in the context of plaintiff's ADA claims and concerns only plaintiff's physical limitations. These arguments are irrelevant to the determination of whether plaintiff was qualified for the purposes of Title VII since a Title VII plaintiff need only show he is minimally qualified. *Bullington*, 186 F.3d at 1316, n. 11.

■ Because plaintiff has established his prima facie case, the burden shifts to the defendants to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *EEOC v. Flasher Company, Inc.*, 986 F.2d 1312, 1316 (10th Cir.1992) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). The word non-discriminatory "refers only to the classes of people protected by Title VII." *Flasher*, 986 F.2d at 1316. Thus, defendants' explanation is not discriminatory under Title VII if it is based on characteristics other than race, religion, color, sex or national origin. *Flasher*, 986 F.2d at 1316. Defendants have maintained that plaintiff was not returned to work because his physical limitations prevented him from performing the functions of the job. This proffered explanation is non-discriminatory for the purposes of Title VII.[4] Because defendants have provided a non-discriminatory reason for it's failure to return plaintiff to work, the burden shifts to the plaintiff to show defendants' proffered reason is pretextual.

■ Pretext may be established by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994) (internal quotations omitted). Plaintiff may make this showing by presenting evidence that similarly situated, non-protected employees were treated differently. *Kendrick*, 220 F.3d at 1232. It is important to note, however, that not every difference in treatment will establish discriminatory intent. *Kendrick*, 220 F.3d at 1232.

Plaintiff contends that the real reason he was not returned to work after his 1996 surgery is because he was born in Iran and is of Assyrian descent. Plaintiff supports his position by claiming other employees who were Caucasian were returned to work after being injured and were accommodated. Defendants do not contest this assertion. While this may be true, plaintiff failed to provide any information about the employees who were allegedly allowed to return to work after having been injured. For example, plaintiff failed to provide information regarding the extent of the injuries suffered by other employees, the extent of accommodations needed by such employees, whether the employees had permanent restrictions and if so were the restrictions as comprehensive as the restrictions put on plaintiff.[5] Because plaintiff has failed to offer this information, the court is unable to determine whether plaintiff and the employees who returned to work after being injured were similarly situated.

As stated previously, differences in treatment among protected and non-protected employees will not necessarily establish a claim of pretext. *Kendrick*, 220 F.3d at 1232. Thus, the court finds that the fact that defendants returned other employees to work after having been injured is insufficient evidence from which a reasonable fact-finder could deduce that

---

4. Whether or not defendants' explanation is non-discriminatory under the ADA is irrelevant for purposes of determining whether defendants violated Title VII.

5. Plaintiff's affidavit included an account of a co-worker named Jerry Cook ("Cook") who had been burned on the job. Plaintiff recounts a conversation that he had with Cook in which Cook described his injuries and defendants' willingness to put him back to work and accommodate him. There are substantial differences between Cook's and plaintiff's circumstances that render this court unable to make a comparison. Cook's injuries required that he be in air-conditioning and defendants were able to accommodate that need. Plaintiff's injuries, however, were much different and the court finds that plaintiff has failed to show he and Cook were "similarly situated."

the reason plaintiff was not returned to work was because of his race or national origin.

This court finds that the reason given for terminating the plaintiff-that his medical restrictions prevented him from performing his job-was not a pretext and the reason given is not prohibited by Title VII. The court concludes that plaintiff has not put forth sufficient evidence to create a genuine issue of material fact on the issue of pretext, and as such, the court grants summary judgment for defendants.

### 4. Failure to Promote

█ Plaintiff also claims defendants failed to promote him to the position of Maintenance Planner in January of 1997. To establish a prima facie claim of discriminatory failure to promote under Title VII, plaintiff must show that, he was a member of a protected class, there were promotional opportunities available, he was qualified for the promotion, and despite his qualifications he was not promoted. *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir.1997) (citing *Nulf v. Int'l Paper Co.*, 656 F.2d 553, 558 (10th Cir.1981)). Plaintiff has met the first element of this prima facie case by showing that he is a member of a protected class. Plaintiff established the second and third prong of the prima facie case by showing a promotional opportunity for Maintenance Planner existed in January of 1997 and that he was qualified for the position. As stated previously, plaintiff need only show he is minimally qualified for the position in question at the prima facie stage. *Bullington*, 186 F.3d at 1306, n. 11. Plaintiff has made this showing through his own testimony in his deposition. (Pl. Depo. at 61). Plaintiff also presents the affidavit of Randy McIntosh ("McIntosh"), the employee hired for the position of Maintenance Planner. Mr. McIntosh's affidavit states that he believes plaintiff would be able to perform the functions of Maintenance Planner. (McIntosh

Aff. at 2). Finally, the last element of the prima facie case is established because despite plaintiff's qualifications, he was not promoted to the position of Maintenance Planner.

█ Because plaintiff has established his prima facie case, defendants must articulate a non-discriminatory reason for their failure to promote plaintiff. Defendants maintain they did not promote plaintiff because plaintiff's physical limitations prevented him from performing the functions of the job. In fact, when the Maintenance Planner position became open, plaintiff was still on medical leave and had not been working at the plant for over one and half years.

Although defendants did not promote plaintiff to the position of Maintenance Planner, plaintiff neither knew of or applied for the job. Furthermore plaintiff presented no evidence that the successful job candidate, Randy McIntosh was less qualified than plaintiff. (Pl. Depo. at 60–62). Plaintiff admits that he and McIntosh had similar levels of experience and the only real difference between the two was that plaintiff had more seniority. Plaintiff's evidence is insufficient to prove that defendants' proffered reason was pretextual. · *See Bullington*, 186 F.3d at 1319 (quoting *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 864 (8th Cir.1997)) (stating that "a comparison that reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate would not raise an inference of racial discrimination"). "The disparity of qualifications must be 'overwhelming' to be evidence of pretext." *Bullington*, 186 F.3d at 1319 (quoting *Sanchez v. Philip Morris*, 992 F.2d 244, 247 (10th Cir.1993)). Thus, defendants' motion for summary judgment for failure to promote is granted.

## B. Retaliation

Title VII and the ADA make it unlawful to retaliate against an employee for participating in certain protected activities. 42 U.S.C. § 2000e–3(a); 42 U.S.C. §§ 12101 *et seq.* Once again, the *McDonnell Douglas* framework guides the court's analysis. *See McGarry v. Board of County Comm'rs*, 175 F.3d 1193, 1201 (10th Cir.1999). To establish a prima facie case of retaliation, plaintiff must demonstrate that: (1) he engaged in protected opposition to discrimination; (2) he was subjected to adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *Id.* (citing *Griffith v. Colorado*, 17 F.3d 1323 (10th Cir.1994)). Ultimately, the burden is on the plaintiff to produce evidence demonstrating that the employer took the adverse action in an effort to retaliate. *Bullington*, 186 F.3d at 1320–21.

Plaintiff has satisfied the first two elements of the prima facie case. First, plaintiff engaged in two protected activities. Plaintiff's first protected activity transpired when his attorney, Joni Franklin, wrote a letter to defendants on January 6, 1997. The letter stated that plaintiff had been released to return to work and that defendants' refusal to accommodate plaintiff's restrictions and return him to work would be viewed as a violation of his rights under the ADA. (Pl.Ex. 13). Plaintiff's second protected activity was filing a complaint with the EEOC/KHRC in July of 1997. Additionally, plaintiff satisfied the second element of his prima facie case by showing that he suffered an adverse employment action, namely, defendants refused to allow him to return to work, and he was not promoted to Maintenance Planner in January of 1997.

To complete his prima facie burden, plaintiff must show a causal connection between the protected activity and the adverse employment action. The causal connection may be shown by production of evidence justifying an "inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Kendrick*, 220 F.3d at 1234 (quoting *Bullington*, 186 F.3d at 1320). Defendants argue, and the court agrees, that defendants took their position regarding plaintiff's future at defendants' company prior to either of plaintiff's protected activities. Beginning on December 17, 1996, defendants adhered to their position that plaintiff would not be returned to work because there was no position available that plaintiff could perform with his physical restrictions. Additionally, instead of abruptly terminating plaintiff, defendants hired an independent vocational rehabilitation specialist, Ron Combs, to determine whether plaintiff's physical limitations prevented him from performing the duties of a Mechanical Specialist. On two different occasions Ron Combs reported to defendants that even with the requested accommodations, plaintiff's physical restrictions would prevent him from safely performing the required work of a Mechanical Specialist. (Def. Ex. B and E). Mr. Combs also found there were no other positions within the Maintenance Department that would require lighter physical demands.

Plaintiff has failed to show a causal connection between his protected activities and defendants' failure to return him to work or defendants' failure to promote him to Maintenance Planner. Because plaintiff has failed to produce evidence demonstrating that defendants did not return plaintiff to work and refused to promote him in an effort to retaliate, the court grants defendants' motion for summary judgment on the issue of retaliation.

## C. § 1981

Racial discrimination in "the making, performance, modification, and termination

of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" is prohibited by 42 U.S.C. § 1981(a)-(b). To make a claim under § 1981, plaintiff must show defendants intentionally or purposefully discriminated against him. *Reynolds v. School Dist. No. 1,* 69 F.3d 1523, 1532 (10th Cir.1995) (citing *General Bldg. Contractors Ass'n Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)). The court analyzes claims brought pursuant to Title VII and § 1981 under the same *McDonnell Douglas* burden-shifting framework. *Stephens v. City of Topeka,* 33 F.Supp.2d 947, 958 (D.Kan. 1999).

■ As a starting matter, the statute of limitations prevents the court from considering several of plaintiff's allegations. There is a two-year statute of limitations for claims of discrimination under to § 1981.[6] *See Garcia v. University of Kansas,* 702 F.2d 849, 851 (10th Cir.1983). Thus, the court will only consider events occurring two years prior to May 27, 1999, the date plaintiff filed his complaint with the court. This time frame prevents the court from considering defendants' failure to promote plaintiff in 1995, defendants' failure to promote plaintiff in January of 1997, and the ethnic slurs targeted toward plaintiff during his time at defendants' company. The court is left only with plaintiff's claim that he was not returned to work or accommodated after his 1996 surgery because of his race.

■ Because the court analyzes a § 1981 claim with the same framework as a Title VII claim, it would be redundant to address every element. Plaintiff's § 1981 claim fails for largely the same reasons that his Title VII claims failed. The court finds that although plaintiff has made a prima facie case under the *McDonnell Douglas* burden shifting framework, he has failed to show that defendants' non-discriminatory explanation for refusing to return plaintiff to work is pretextual and the real reason is discriminatory and in violation of § 1981.

### D. ADA

■ The ADA prohibits a covered entity from discriminating against a "qualified individual with a disability" because of the individual's disability with respect to "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). *See, e.g., Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 897 (10th Cir.1997); *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir.1995). Thus, to establish a prima facie case under the ADA, plaintiff must demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) that he is qualified—with or without reasonable accommodation; and (3) he was discriminated against because of his disability." *Butler v. City of Prairie Village,* 172 F.3d 736, 748 (10th Cir.1999).

This court will forgo a determination of whether plaintiff was disabled within the meaning of the ADA because even assuming, *arguendo,* that plaintiff is disabled, defendants are entitled to summary judg-

---

**6.** Federal law does not provide for a statute of limitations relating to civil rights actions brought under § 1981. *Garcia,* 702 F.2d at 850. Instead, federal courts apply the most appropriate limitations period under state law. The Tenth Circuit has determined that the "Kansas limitations statute which most nearly describes the nature of a plaintiff's cause of action [under § 1981] is K.S.A. § 60–513 directed to injury to rights of another and providing a two-year period." *Garcia,* 702 F.2d at 851.

ment because plaintiff's statements in his claim for Social Security Disability Insurance ("SSDI") negates an essential element of his ADA claim: namely that he is a "qualified individual."

The Tenth Circuit has adopted a two-tiered analysis for determining whether a person is a "qualified individual" under the ADA:

> First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir.1995).

Much controversy exists among the parties regarding whether plaintiff is able to perform the essential functions of the job. Plaintiff contends that he is able to perform all of the essential functions of a Mechanical Specialist. Plaintiff, however, has taken the opposite position in his requests for SSDI. On four separate occasions, plaintiff told the Social Security Administration ("SSA") that he was unable to work because of his disabling condition. (Def. Ex. G, H, I, and J).

In plaintiff's February 13, 1996, application for SSDI benefits, plaintiff certified that he "became unable to work because of [his] disabling condition on July 31, 1995" and that he was "still disabled." (Def.Ex. G). Following the SSA's denial of disability benefits, plaintiff submitted a request for reconsideration on June 13, 1996. Plaintiff's request contained the following statement: "My condition has not improved enough to resume any level of work activity." (Def.Ex. H). Plaintiff applied for SSDI again on April 14, 2000, stating

that his disabling condition included "herniated discs, depression and rotator cuff [pain]." (Def.Ex. I). Finally, on July 3, 2000, plaintiff filed another request for reconsideration with the SSA stating again that he was disabled. (Def.Ex. J).

The Supreme Court recently addressed how sworn statements of disability made to the SSA impact an ADA claim. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). The Court recognized that statements made to the SSA to support a "general" finding of disability do not necessarily conflict with a finding of ability to perform the essential functions of a "specific" job in an ADA claim. *Id.* at 803, 119 S.Ct. 1597 ("an SSDI claim and an ADA claim can comfortably exist side by side"). The Court acknowledged that in some cases the representations made to the SSA may genuinely conflict with the ADA claim. In such cases, the plaintiff must offer a sufficient explanation for the apparent conflict. The court held that:

> An ADA plaintiff bears the burden of proving that she is "a qualified individual with a disability"—that is, a person "who, with or without reasonable accommodation can perform the essential functions of her job." 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. For that reason, *we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim.* Rather she must proffer a sufficient explanation.

*Id.* at 806, 119 S.Ct. 1597 (emphasis added). To defeat summary judgment, the proffered explanation "must be sufficient

to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 807, 119 S.Ct. 1597.

In addition to the general statement "I am unable to work because of my disabling condition," plaintiff made the following specific factual representations to the SSA: headaches that last many days, numbness in hand, herniated discs, depression, and rotator cuff problems. Under *Cleveland,* plaintiff must proffer a sufficient explanation as to how these statements to the SSA are consistent with his ADA claim that he could perform "the essential functions" of his the job. 526 U.S. at 798, 119 S.Ct. 1597. He cannot "simply ignore the apparent contradiction" between his statements. *Id.* at 798, 119 S.Ct. 1597. For example, in *Smith v. Midland Brake* this court found that the plaintiff, who had made contradictory statements regarding his ability to work in his ADA case and in his SSDI request, sufficiently explained the conflict between the two statements. 98 F.Supp.2d 1233, 1242 (D.Kan.2000). The plaintiff in *Smith* was able to make such a showing by demonstrating that while he was unable to perform a broad spectrum of jobs, he was able to perform many available positions within the defendants' company. Additionally, the social security record consisted of medical statements and evaluations demonstrating plaintiff could perform other work. *Id.* at 1240. In this case, however, the social security records provided to the court contain only statements by plaintiff maintaining he is too disabled to work, and plaintiff did not even attempt to explain the discrepancies between his statements to the SSA and his assertions in the ADA litigation.

Unfortunately for plaintiff, he fails to even recognize the Supreme Court's decision in *Cleveland* and refers the court to the Tenth Circuit's decision in *Lowe v. Angelo's Italian Foods, Inc.,* No. 97–3139, 1998 WL 255051, 1998 U.S.App. Lexis 10224 (10th Cir. May 19, 1998), *rev'g Lowe v. Angelo's Italian Foods, Inc.,* 966 F.Supp. 1036 (D. Kan.1997), *on remand from Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170 (10th Cir.1996). In *Lowe,* the Tenth Circuit held that the doctrine of judicial estoppel does not create an automatic bar to a disability discrimination claim under the ADA when a plaintiff has made claims of permanent disability in connection with an application for SSDI.[7] 1998 WL 255051 at *2, 1998 U.S.App. Lexis, 10224 at *4 (citing *Rascon v. U.S. West Communications,* 143 F.3d 1324 (10th Cir. 1998)). The Supreme Court's decision in *Cleveland* coincides with the Tenth Circuit decision in *Lowe,* in that the court found a plaintiff seeking SSDI is not estopped from making an ADA claim. *Cleveland,* 526 U.S. at 797, 119 S.Ct. 1597. The *Cleveland* court, however, added that an ADA plaintiff "cannot simply ignore her SSDI contention that she was too disabled to work." *Cleveland,* 526 U.S. at 798, 119 S.Ct. 1597. If a plaintiff does ignore his or her contradictions, he or she cannot survive summary judgment. *Cleveland,* 526 U.S. at 798, 119 S.Ct. 1597.

Because plaintiff failed to explain the inconsistencies of his statements, this court is required to find plaintiff's statements to the SSA, negate an essential element of his ADA case-namely that he is a "qualified individual." *See id.* at 806, 119 S.Ct. 1597; *See also Motley v. New Jersey*

---

**7.** Judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding. *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 71 (2d Cir.1997).

*State Police,* 196 F.3d 160, 165 (3d Cir. 1999). Even assuming that plaintiff is considered disabled under the ADA, his failure to address the inconsistencies of his statements renders him unable to show that he is a qualified individual and thus he cannot establish a prima facie case under the ADA. *Cleveland,* 526 U.S. at 806, 119 S.Ct. 1597. Therefore, defendants' motion for summary judgment as to plaintiff's ADA claim is granted.

## IV. CONCLUSION

The court grants summary judgment as to all of plaintiff's claims. First, summary judgment is granted as to plaintiff's Title VII and § 1981 claims because plaintiff has failed to sufficiently demonstrate that defendants' proffered reason for failing to return plaintiff to work in 1996 and failing to promote plaintiff in 1997 was pretextual. Second, summary judgment is granted as to plaintiff's retaliation claim because plaintiff failed to show a causal connection between plaintiff's protected activity and the adverse employment action. Finally, summary judgment is granted as to plaintiff's ADA claim because plaintiff's failure to explain the contradictions between his sworn statements to the SSA and his statements in the ADA litigation negates an essential element of the prima facie showing.

**IT IS THEREFORE BY THIS COURT ORDERED** that the defendants' Motion for Summary Judgment (Doc. 14) is granted.